## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### Southern Division

TROY WILLIAM TINGLEY

        Plaintiff,

                                  Case No.  1:20-cv-00094

Vs                                  Honorable

STATE OF MIGHIGAN,
MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES (MDHHS),
ROBERT GORDON, HERMAN
McCALL, JOOYEUN CHANG,
KENT COUNTY DEPARTMENT OF HEALTH AND
HUMAN SERVICES, TRACEY FOUNTAIN,
SAVATOR SELDEN-JOHNSON, SCOTT ORR,
NYELA BOLDEN, JEREMY NOVASAD,
CINDY L. SHACKLETON, KERI DESMARAIS,
DANIEL KUCHAN, NICOLE LUSTER,
SHELBIE WILLIAMS,
YWCA WEST CENTRAL MICHIGAN,
TOM COTTRELL and RUTHIE PAULSON

        Defendants

---

CHRISTOPHER M. WIRTH (P70174)
Attorney for Plaintiff
CORE LEGAL PLC
250 Monroe Avenue NW, Suite 400
Grand Rapids, MI 49503
D:  (616) 855-2145
F:   (616) 879-0400
CWirth@CoreLegalPLC.com

---

## COMPLAINT AND JURY DEMAND

---

## COMPLAINT

Plaintiff states:

## JURISDICTION AND VENUE

1.  This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.  All of the parties are located in the State of Michigan and within the Federal Court's Western District of Michigan, Southern Division.  The acts complained of arose in the Western District of Michigan, in the counties of Kent and Ingham.  Venue in the Western District, Southern Division is proper pursuant to 28 U.S.C. § 1391 and local court rule.

## PLAINTIFF

3.  Plaintiff TROY WILLIAM TINGLEY is the legal parent of two minor children and a United States citizen residing in the Township of Ada, Michigan, County of Kent.

4.  Plaintiff is the legal father of a son (date of birth 07/08/2003) and a daughter (date of birth 05/08/2007).

5.  Plaintiff and the children's mother divorced in 2010 and are subject to custody, parenting time and child support orders regarding these children in Case Number 13-05831-DM, 17th Circuit Court for the County of Kent, before the Honorable Kathleen Feeney (the "Custody Case").

6.  At all times relevant to this lawsuit, Plaintiff and the children's mother have shared joint custody of the children, and Plaintiff has had an order of parenting time pursuant to which the children were in his care approximately 40-percent of the time. Since August of 2018, his son has been in his care 100-percent of the time.

7. Plaintiff was deprived of his rights, privileges or immunities secured by the Constitution or laws of the United States due to the conduct of the Defendants.

8. Plaintiff had and has a fundamental, Constitutional right to make decisions concerning the care, custody, and control of his children. *Meyer v Nebraska*, 262 US 390, 399-400; 43 S Ct 625; 67 L Ed 1042 (1923). The right to parent one's children is "essential to the orderly pursuit of happiness by free men," *Id* at 399, and "is perhaps the oldest of the fundamental liberty interests," *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000). The right is an expression of the importance of the familial relationship and "stems from the emotional attachments that derive from the intimacy of daily association" between child and parent. *Smith v Org of Foster Families for Equality & Reform*, 431 US 816, 844; 97 S Ct 2094; 53 L Ed 2d 14 (1977)."

9. Further Plaintiff had and has a fundamental, Constitutional right to free speech and assembly. U.S. Const. amend. 1.

10. Plaintiff had and has a fundamental, Constitutional right to be free from search and seizure. U.S. Const. amend. 4.

11. Plaintiff had and has a fundamental, Constitutional right to be free from self-incrimination. U.S. Const. amend. 5.

12. Plaintiff had and has a fundamental, Constitutional right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment. U.S. Const. amend. 14.

13. Plaintiff was deprived of all of the foregoing rights by Defendants.

14. Plaintiff was deprived by Defendants of his rights protected in the substantive component of the Due Process Clause of the Fourteenth Amendment.

## **DEFENDANTS**

15. The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

16. Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiff, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing injury, or in some other actionable manner.

17. Defendant STATE OF MICHIGAN is sued in its capacity of operating the Michigan Department of Health and Human Services ("MDHHS"). At all times relevant hereto, Defendant State of Michigan is sued in its capacity as manager of the agency tasked with assuring that all services and programs operate in conformity with constitutional, statutory, and regulatory requirements.

18. Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES is sued in its capacity as the agency tasked with assuring that all services and programs operate in conformity with constitutional, statutory, and regulatory requirements.

19. Defendant ROBERT GORDON is or was the Director of MDHHS and is sued in his official capacity. Director Gordon is responsible for administering all MDHHS programs and assuring that all services and programs operate in conformity with constitutional, statutory, and regulatory requirements.  Director Gordon maintains or

maintained his principal office at the MDHHS, 235 S. Grand Avenue, Lansing, Michigan 48909, County of Ingham.

20. Defendant HERMAN McCALL is or was the Executive Director of the Michigan Children's Services Agency.  Dr. McCall is sued in his official capacity.  Dr. McCall reports or reported directly to the director of MDHHS and has or had overall operational responsibility for Michigan's Children's Services Agency.  Dr. McCall maintains or maintained his principal office at the MDHHS, 235 S. Grand Avenue, Lansing, Michigan 48909, County of Ingham.

21. Defendant JOOYEUN CHANG is the senior deputy director of the Children's Services Agency at the Michigan Department of Health and Human Services.  Deputy Director Chang is sued in her official capacity.  Deputy Director Chang reports directly to the executive director of MDHHS and has overall operational responsibility for Michigan's Children's Services Agency.  Deputy Director Chang maintains her principal office at the MDHHS, 235 S. Grand Avenue, Lansing, Michigan 48909, County of Ingham.

22. Defendant TRACEY FOUNTAIN is or was the Director of Kent County - MDHHS.  Kent County – MDHHS is a governmental subdivision of the MDHHS located in the County of Kent, State of Michigan.  Director Fountain is sued in her professional capacity.  Director Fountain reports directly to Deputy Director Chang and has overall operational responsibility for Kent County – MDHHS.  Director Fountain maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

23. Defendant SAVATOR SELDEN-JOHNSON is or was the Child Welfare Director for Kent County - MDHHS.  Director Selden-Johnson is sued in her individual and professional capacity.  Director Selden-Johnson reports directly to Director Fountain and has day-to-day management responsibility for Kent County – MDHHS Child Welfare. Director Selden-Johnson maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

24. Defendant SCOTT ORR is Supervisor of Child Protective Services for the Kent County – MDHHS.  Supervisor Orr is sued in his individual and professional capacity. Supervisor Orr reports directly to Director Selden-Johnson and has day-to-day supervision responsibility for the Child Protective Services division of the Kent County – MDHHS.  Supervisor Orr maintains his principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

25. Defendant NYELA BOLDEN is a Kent County – MDHHS Child Protective Services Ongoing Supervisor.   Supervisor Bolden is sued in her individual and professional capacity. Supervisor Bolden reports directly to Supervisor Orr and is or was a supervisor responsible for the supervision of Defendant Daniel Kuchan. Supervisor Bolden maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

26. Defendant JEREMY NOVASAD is a Kent County – MDHHS Child Protective Services Ongoing Supervisor.   Supervisor Novasad is sued in his individual and professional capacity. Supervisor Novasad reports directly to Supervisor Orr and is or was a supervisor responsible for the supervision of Defendant Daniel Kuchan. Supervisor

Novasad maintains his principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

27. Defendant MATT KUZMA is a Kent County – MDHHS Child Protective Services Ongoing Supervisor. Supervisor Kuzma is sued in his individual and professional capacity. Supervisor Kuzma reports directly to Supervisor Orr and is or was a supervisor who was directly responsible for the supervision of Defendant Nicole Luster. Supervisor Kuzma maintains his principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

28. Defendant CINDY L. SHACKLETON is a Kent County – MDHHS Child Protective Services Ongoing Supervisor. Supervisor Shackleton is sued in her individual and professional capacity. Supervisor Shackleton reports directly to Supervisor Orr and is or was a supervisor who was directly responsible for the supervision of Defendant Nicole Luster. Supervisor Shackleton maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

29. Defendant KERI DESMARAIS is a Kent County – MDHHS Child Protective Services Ongoing Supervisor. Supervisor Desmarais is sued in her individual and professional capacity. Supervisor Desmarais reports directly to Supervisor Orr and is or was a supervisor who was directly responsible for the supervision of Defendants Nicole Luster and Shelbie Williams. Supervisor Desmarais maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

30. Defendant DANIEL KUCHAN is a Child Protective Services caseworker for the Kent County – MDHHS. Mr. Kuchan is sued in his individual and professional capacity.

Mr. Kuchan was or is a caseworker for the Kent County – MDHHS. Mr. Kuchan maintains his principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

31. Defendant NICOLE LUSTER is or was a Child Protective Services caseworker for the Kent County – MDHHS.  Ms. Luster is sued in her individual and professional capacity.  At all times relevant to this action, Ms. Luster maintained her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

32. Defendant SHELBIE WILLIAMS is a Child Protective Services caseworker for the Kent County – MDHHS.  Ms. Williams is sued in her individual and professional capacity.  Ms. Williams was or is a caseworker for the Kent County – MDHHS. Ms. Williams maintains her principal office at Kent County – MDHHS, 121 Franklin Street, S.E., Suite 200, Grand Rapids, MI 49507, County of Kent.

33. Defendant YWCA WEST CENTRAL MICHIGAN is an agent and/or contractor of MDHHS or Kent County - MDHHS who acted as its agent in connection with the circumstances of this lawsuit.  The agent maintains its principal office at 25 Sheldon Boulevard, SE, Grand Rapids, MI 49503, County of Kent.

34. Defendant TOM COTTRELL is the Chief Programming Officer for Defendant YWCA West Central Michigan and is or was a supervisor who was directly responsible for the supervision of Defendant Ruthie Paulson.  Mr. Cottrell is sued in his individual and professional capacity.  Mr. Cottrell maintains his principal office at 25 Sheldon Boulevard, SE, Grand Rapids, MI 49503, County of Kent.

35. Defendant RUTHIE PAULSON is the Safe Connections Program Manager for Defendant YWCA West Central Michigan.  Ms. Paulson is sued in her individual and professional capacity.   Ms. Paulson maintains her principal office at 25 Sheldon Boulevard, SE, Grand Rapids, MI 49503, County of Kent.

36. Defendant JOHN DOE I represents the employees of the State of Michigan or Kent County who had additional supervisory or professional responsibilities for Defendant Daniel Kuchan but are unknown to Plaintiff at this time.  Plaintiff will amend this complaint when such individuals are identified.

37. Defendant JOHN DOE II represents the employees of the State of Michigan or Kent County who had additional supervisory or professional responsibilities for Defendant Nicole Luster but are unknown to Plaintiff at this time.  Plaintiff will amend this complaint when such individuals are identified.

38. Defendant JOHN DOE III represents the employees of the State of Michigan or Kent County who had additional supervisory or professional responsibilities for Defendant Shelbie Williams but are unknown to Plaintiff at this time.  Plaintiff will amend this complaint when such individuals are identified.

39. Defendant JOHN DOE IV represents all agencies and contractors of the State of Michigan or Kent County who acted as agents of the State of Michigan or Kent County in connection with the circumstances of this lawsuit but are unknown to Plaintiff at this time.  Plaintiff will amend this complaint when such individuals are identified.

40. Defendant JOHN DOE V represents the employees of the State of Michigan or Kent County who were executive staff for MDHHS or Kent County – MDHHS at any time relevant to the allegations in this lawsuit but were subsequently replaced when the

executive administration transferred from Governor Rick Snyder to Governor Gretchen Whitmer. Plaintiff will amend this complaint when such individuals are identified.

41. The Defendants acted individually and jointly under color of law to deprive Plaintiff of his civil rights. Because they acted knowingly, recklessly and in disregard of well-established law, with no objectively reasonable basis for their actions, they do not have qualified immunity from damages under the standards set forth by the United States Supreme Court, the Sixth Circuit and this Court.

42. The Defendants' conduct is an ongoing series of acts and failures to act causing irreparable harm to Plaintiff.

## FACTS

43. Each and every allegation of the Complaint is incorporated as if fully set forth herein.

44. Child Protective Services in Kent County ("KCPS"), a division within Kent County – MDHHS, first opened an investigation involving these children in July 2013 following a complaint that the children's mother was using excessive discipline with their son, then 10-years old, and that the children witnessed an event of domestic assault between their mother and maternal grandfather.

45. The investigation was closed and Kent County - MDHHS failed to substantiate the complaint.

46. On or about November 27, 2015 a second investigation was opened by KCPS concerning the mother and the children.

47. The investigation was in response to a disclosure by Plaintiff's son, then 12-years old, that the mother had physically abused him by repeatedly striking him, including blows to the face.

48. Plaintiff's son was seen for his injuries -- which included bruising to his face, eye and arm -- by urgent care doctor, Linda VandenBosch, M.D. of Spectrum Health in Grand Rapids, Michigan.

49. Dr. VandenBosch later testified in the Custody Case that the boy disclosed physical abuse by his mother consistent with his injuries.

50. She further testified in the Custody Case that the child made such disclosures in the course of his medical treatment and that she did not identify any reason to believe his statement was false, coached or coerced, or inconsistent with his presenting injuries.

51. She also testified that she reported the incident to Kent County -- MDHHS central intake as a mandatory reporter believing the boy had been the subject of non-accidental pediatric abuse.

52. KCPS investigator Kaley Dzwonkowski was the initial on-call investigator.  Ms. Dzwonkowski reported after meeting face-to-face with Plaintiff's son that:

> *"Various facial bruises were observed and were photographed. There was a bruise on his left cheek, a bruise under his right eye and a slight bruise/bump on his forehead. There was also a bruise on each arm. [The boy] was able to demonstrate an understanding of the forensic rule protocol through answering a series of sample questions correctly…[the boy] stated that the rules at his mom's house are that he has to listen and he cannot be on the iphone after 9:30.  If he breaks the rules his mom will hit him by punching, smacking or kicking him and the only time he feels safe at home is when he has company, however, after his company leaves, he has no idea what his mom is going to do with him…"*

> *"When asked allegation specific questions, [the boy] reported that on Thanksgiving he and his sister and mom were planning on going to his maternal aunt's home and were waiting on their mom to finish getting ready and he and [his sister] were play-fighting. [His sister] hit him relatively hard and he started chasing after her. His*

*mom got mad and started chasing after him because she thought he was going to hit her. [The boy] indicated that he jumped into his bed to keep himself safe and as he was jumping in the bed he hit his cheek on the bed post and then hid under the sheets and closed his eyes while his mom started beating on him. [The boy] stated that his mom told him to stay in his room and he and his sister started arguing again and his mom came at him again and he jumped back into bed and she was trapping him under his sheets. [The boy] stated that when he finally lifted his head up, his mom hit him in the eye with the bottom of her palm and his vision got blurry and she kept hitting and kicking him until she finally stopped. [The boy] stated that when they got to his aunt's house, his mom blamed everything on him and stated that he lost control and she was trying to calm him down."*

*"[The boy] stated that his mom has attacked him in the past and it will sometimes happen out of nowhere. [The boy] reported that he is scared about her finding out that he told because his punishment generally gets worse whenever she finds out that he has told someone what she does to him. [The boy] indicated that he can sometimes speak with the school counselor [redacted], but his mom hit him the last time [the school counselor] called her. [The boy] stated his mom will also hit his sister, but not as often and not as hard. [The boy] reported that this past Sunday, his mom told him that she was going to 'cut his throat and no one would know he was dead and she would let him slowly bleed out' so he got scared and ran away to a neighbor down the street to call his dad. His dad did not answer the phone so he went back home and his* [sic] *[the boy] reported that the only person he feels safe with is his dad."*

53. Ms. Dzwonkowski also interviewed the boy's sister (Plaintiff's daughter). She reported after meeting face-to-face with the sister that:

*"…[the sister] was able to demonstrate an understanding of the forensic rule protocol through answering a series of sample questions correctly…[The sister] reported that she did not know what she liked about her mom and dislikes when her mom hits them, calls them names and flips them off. [The sister] stated that her favorite thing about her dad is that he never spanks her or her brother and she does not have anything she dislikes about him. [The sister] reported that at her mom's house she has to treat her with respect and she is not allowed to fight and when she gets in trouble, her mom will hurt her/spank her with her hand, belt or back of the brush, and/or call her names (fucker, motherfucker, bitch, cunt and asshole)."*

*"[The sister] stated that at her dad's she just has to respect him, do her chores and do her homework and if she breaks a rule her dad will only yell."*

*"When asked investigation specific questions, [The sister] stated that she accidentally hit [the boy] while they were play fighting and he started chasing her. Her mom ran after him because she thought that he was going to hurt her and he ran upstairs to his room and she ran into her mom's room. [The sister] reported that [the boy] started covering his face and their mom kept hitting him. [The sister] indicated that [the boy] told their family what happened and their mom lied and*

*blamed everything on him. [The sister] reported that their mom lies a lot and she has hit her before and left marks. [The sister] stated that she tells her dad whenever this happens and only feels safe at his house."*

54. It is customary for an investigation to be transferred to an ongoing KCPS caseworker after the initial investigation by the on-call caseworker.  This investigation was transferred from Ms. Dzwonkowski to Defendant Daniel Kuchan on or about November 30, 2015.

55. Defendant Kuchan, together with a detective from the Kentwood Police Department, interviewed Plaintiff's son at his school on December 1, 2015.  Defendant Kuchan's report of the boy's statements were nearly identical to his disclosures to Ms. Dzwonkowski.

56. On December 3, 2015, Defendant Kuchan, together again with the detective, interviewed Plaintiff's daughter at her school.  Defendant Kuchan's report of her statements were also nearly identical to her disclosures to Ms. Dzwonkowski.

57. Defendant Kuchan also reported listening to a recording of a conversation Plaintiff's daughter had in which she said *"[mom is] saying if [I] do that, I'm going to cut your throat open...That's what she is saying...I'm just scared...That's why I want to stay with you...I don't want you to tell [mom] cause I know it'll get worse...Have you told [mom] about the other stuff...Ok good.*"

58. On December 4, 2015, Defendant Kuchan and his supervisor, Defendant Nyela Bolden, discussed the case and determined there was no need for the children to be removed from mother's care, no need for mother's parenting time with the children to be supervised, and no need for court involvement. Consequently, the children were forced to return home to their mother.

59. Defendants Kuchan and Bolden took the position they did not like Plaintiff's attitude, which was understandably vigilant given the degree of abuse his children were experiencing and Defendants' repeated failures to protect his children.

60. Rather than take action to protect the children from their mother's continued abuse, Defendants Kuchan and Bolden requested that Plaintiff submit to a psychological examination.

61. Plaintiff completed the examination on January 6, 2016.  The result of the psychological examination raised no concerns regarding his capacity to parent and reported normal mental health.

62. Meanwhile, the Kentwood detective submitted the criminal investigation to the prosecuting authority for criminal charges.

63. The Kent County Prosecutor's Office charged the mother with Child Abuse in the 3rd Degree, a 2-year felony under Michigan Codified Law 750.136b, Michigan Penal Code Act 328 of 1931 § 136b(5) and (6).

64. On or about January 22, 2016, the mother was arrested in Big Rapids, Mecosta County, Michigan pursuant to the warrant issued for her arrest in the Kent County criminal child abuse case.

65. Nevertheless, on or about March 2, 2016, Defendants Kuchan and Bolden decided to close the physical abuse investigation of the mother as unsubstantiated -- citing no preponderance of the evidence for physical abuse.

66. Their decision was made even while the criminal case was still pending.

67.  Their decision was not reconciled with the photographs of the boy's injuries.

68. Their decision was not reconciled with the boy's statements to Dr. VandenBosch, the treating physician.  Indeed, no one from Kent County – MDHHS even spoke with Dr. VandenBosch.

69.  Their decision was not reconciled with the children's statements to the initial KCPS investigator, Kaley Dzwonkowski.

70. Their decision was not reconciled with the children's statements to the detective on the criminal case.

71. Their decision was not reconciled with the disclosures of mother's frequent assaults on Plaintiff during their marriage – in front of both children -- including scratching Plaintiff, throwing things, breaking things and verbally attacking him with profanity.

72. As a direct consequence of Defendants Kuchan's and Bolden's reckless and/or knowing failure to exercise reasonable professional judgment, the Kent County Prosecutor's Office stipulated to entry of an order of *nolle proseque* in the criminal case.

73. The explanation provided to Plaintiff by the assistant prosecuting attorney on the criminal case, Kevin Bramble, was that it would be difficult to obtain a criminal jury conviction once defense counsel learned there was a record of Kent County - MDHHS failing to substantiate by preponderance of the evidence in its investigation of the mother; a lower burden of proof than that which would be required for the jury to return a criminal conviction.

74. In the meantime, Kent County - MDHHS was assisting the mother with referrals to Legal Aid of Western Michigan to provide free legal services in her battle against

Plaintiff in the custody case; despite the fact that the mother already had private retained counsel to assist her.

75. On or about April 22, 2016, Defendants Kuchan and Bolden discriminated against Plaintiff based upon disliking his vigilance and personality.

76. After brushing aside the investigation against the mother, Defendants Kuchan and Bolden improperly substantiated Plaintiff for mental injury and threatened harm to both children.

77. The substantiation was made without satisfying any statutory or MDHHS policy basis for such substantiation, without rational basis and recklessly and/or knowingly violated clearly established laws and legal standards.

78. Federal and state law, and MDHHS policy sets forth specific protections and a specific definition and requirement for substantiating a parent for mental injury and threatened harm to a child.

79. These requirements include diagnosis by a mental health professional of an actual mental health condition of the child(ren) that can be linked to the direct actions of the parent(s).

80. Defendants Kuchan, Bolden and Luster deprived Plaintiff of due process by subverting the role of licensed Michigan mental health professionals by taking upon themselves the task of the mental health diagnosis and causation determination.  Their determination was based solely on their dislike of Plaintiff.

81. As a result, Plaintiff was placed on Michigan's statewide Child Abuse and Neglect Central Registry by Defendants Kuchan and Bolden without rational basis and recklessly and/or knowingly violated clearly established laws and legal standards.

16

82. Defendant Jeremy Novasad then took over the review of the investigation and supervision on Defendant Kuchan.

83. Defendant Novasad failed to act or correct the investigation, and failed to act upon Plaintiff's request for an expunction.

84. The case was then transferred to KCPS caseworker Defendant Nicole Luster for ongoing services.

85. The case and their dislike of Plaintiff was discussed internally among Defendants Kuchan, Bolden, Novasad, Shackleton and Luster.

86. Defendant Luster also failed to act or correct the investigation, and failed to act upon Plaintiff's request for an expunction.

87. Plaintiff requested an administrative law proceeding to challenge the substantiation of mental injury and threatened harm, and to expunge the matter.

88. The Michigan Attorney General's office became involved, reviewed the case materials, and advised Kent County - MDHHS to stipulate to the expunction.

89. Kent County - MDHHS withdrew the substantiation and granted the expunction; but only after the involvement of the Attorney General's office.

90. Plaintiff also contacted the Michigan Office of Children's Ombudsman ("Ombudsman").

91. The Ombudsman independently investigates complaints about children involved with MDHHS.

92. The Ombudsman agreed with Plaintiff that Defendants Kuchan, Bolden, Shackleton, Novasad and Luster had wrongfully substantiated Plaintiff for mental injury and threatened harm to the children.

93. On or about April 12, 2017, Plaintiff filed a motion in the Custody Case and served it upon the mother on April 13, 2017, trying to protect his children.

94. Not coincidentally, the very next day KCPS "received" a complaint alleging Plaintiff had abused his son.

95. The case was again assigned to Defendant Luster notwithstanding her record of case investigation and other concerns known to Defendants.

96. Defendant Luster and her supervisors Defendants Kuzma and Shackleton immediately substantiated Plaintiff for physical abuse of the boy, without following MDHHS policy for such substantiation, and without rational basis. In so doing, they recklessly and/or knowingly violated clearly established laws and legal standards.

97. The substantiation inappropriately contained and focused on allegations that were expunged from the previous investigation; manufactured by the children's mother; and failed to follow-up with collateral contacts identified by the children and Plaintiff as is required by MDHHS policy.

98. Defendants Luster, Kuzma and Shackleton placed Plaintiff on Central Registry for a second time.

99. A child welfare petition was then authored by Defendant Luster and approved by Defendants Kuzma and Shackleton relying on the false and misleading representations of Defendants and the mother, and failures to follow established laws and legal standards.

100.        Defendants Kent County – MDHHS, Luster, Kuzma and Shackleton then presented the petition to the 17th Circuit Court referee "on inquiry" without a probable cause hearing and preliminary examination as to removal; despite their knowledge that

Plaintiff had joint custody and a parenting time plan that placed his children in his care approximately 40-percent of the time.

101.     Predictably, the result was the removal of the children from Plaintiff's care on or about May 5, 2017 without a "hearing on his fitness as a parent before his children were taken from him".[1]

102.     At the request of Defendants Luster, Shackleton and Kuzma, the Plaintiff's parenting time with his children was ordered to be supervised by an agency under a contract with Kent County – MDHHS; specifically, Defendant YWCA West Central Michigan.

103.     The request was made without any valid statutory or MDHHS policy basis.

104.     In the 5-months from May 5, 2017 until October 12, 2017, Defendants only allowed Plaintiff to see his children for 2-hours each week, and "supervised" by Defendants YWCA West Central Michigan and Paulson.

105.     Defendants YWCA West Central Michigan, Paulson, Luster, Shackleton and Kuzma, individually and in concert, arbitrarily and capriciously established their own "rules" regarding Plaintiff's parenting time without any basis in law or MDHHS policy.

106.     Further, such parenting time "rules" were not communicated to Plaintiff in advance of his parenting times.

107.     Through the parenting time "rules", Defendants YWCA West Central Michigan, Paulson, Luster, Shackleton and Kuzma -- under color of law -- subjected Plaintiff to unreasonable searches and seizures, as well as unreasonable restrictions on his

---

[1] *Stanley v Illinois*, 405 U.S. 645, 649 (1972).

communication and assembly with his children in violation of his 1st and 4th amendment rights.

108.    Defendants YWCA West Central Michigan, Paulson, Luster, Shackleton and Kuzma, repeatedly reported false information, inconsistent information, obstructed legal proceedings, failed to comply with orders and requests from the trial court, failed to offer appropriate services, and/or acted in concert to sabotage Plaintiff in the proceedings.

109.    Plaintiff reported such acts to and met with Defendant Tom Cottrell of the YWCA.

110.    Defendant Cottrell failed to correct the acts and was complicit in the continuing violations by Defendants YWCA West Central Michigan and Paulson.

111.    After enduring 5-months of Defendants' harassment and violations the case against Plaintiff was withdrawn by the assistant Kent County Prosecutor representing Kent County -- MDHHS.

112.    Once again, Plaintiff requested an administrative law proceeding to challenge this second substantiation by Kent County – MDHHS and expunge the matter.

113.    Once again, the expunction was granted upon review and the substantiation was removed.

114.    All the while, Defendants knew, or were in a position to know, of concerns regarding Defendant Luster's past work in Kent County – MDHHS.

115.    Further, Defendants knew, or were in a position to know, of concerns regarding Defendant Luster's past employment in and outside of MDHHS.

116.    And, Defendants knew, or were in a position to know, of concerns regarding Defendant Luster's investigations and case handling of other families.

117.    Defendant's knowledge should have resulted in Defendant Luster never being empowered by the Defendants to deprive Plaintiff of his Constitutional rights.

118.    The Defendants knowledge is summarized, in part, in an MDHHS internal investigation report of Defendant Luster that is more than 438-pages long.

119.    The investigation report concluded multiple incidences of wrongdoing by Defendant Luster before, during and after her employment with MDHHS and involvement with Plaintiff's family.

120.    Defendants Fountain, Selden-Johnson, Orr, Bolden, Kuzma, Desmarais and Shackleton continue to allow Kent County – MDHHS to retaliate against Plaintiff for what amounts to simply disliking him and his perseverance.

121.    On or about June 20, 2019 KCPS received a "referral" alleging improper supervision of the children by Plaintiff.

122.    On July 20, 2019, Defendants Shelbie Williams, Keri Desmarais and Kent County -- MDHHS concluded an investigation and again substantiated Plaintiff for child abuse contrary to MDHHS policy, and without rational basis and recklessly and/or knowingly violated clearly established laws and legal standards.

123.    The substantiation again inappropriately contained and focused on allegations that were expunged from the previous investigations.

124.    The investigation again lacked follow-up with collateral contacts identified by the children and Plaintiff.

125.    The investigation again ignored investigatory laws and policies, including the threat that Plaintiff would be substantiated and have his children removed from his care if he refused a drug screen (without a warrant or court order).

126.     Defendants placed Plaintiff on Central Registry for a third time without rational basis and recklessly and/or knowingly violated clearly established laws and legal standards.

127.     Again, Plaintiff sought an expunction of the substantiation and Central Registry placement.

128.     And again, it was determined there was no preponderance of the evidence for the substantiation.

129.     For a third time Plaintiff was removed from Central Registry and the substantiation expunged but only as a result of his diligence in defending his civil rights.

130.     Defendants blamed the MDHHS MiSACWIS records system as being part of the reason for the continuing violations of Plaintiff's civil rights.

131.     However, Defendants knew or were in a position to know that MiSACWIS was insufficient to safeguard the civil rights of Michigan parents, including Plaintiff.

132.     Defendants MDHHS, Gordon, McCall, and Cheung had and have an ongoing, supervisory duty over Kent County - MDHHS and the proper operations of MiSACWIS in their roles as the executive staff and custodians of MDHHS.

133.     This duty is placed upon them to guarantee policies, systems and practices that will safeguard Plaintiff's civil rights and the civil rights of all parents in Michigan.

134.     Defendants MDHHS, Gordon, McCall and Cheung recklessly and/or knowingly violated provisions of federal statutes that are unambiguous, intended to protect families and children, and mandatory, as well as the state laws and manuals that implement the federal requirements and provide a presumptively constitutional plan that

balances the need to protect abused or neglected children against the constitutional rights of families.

135.     Defendants MDHHS, Gordon, McCall, and Cheung were indifferent to those duties and the defects in MiSACWIS because instead of mitigating the risk of harm caused by the defective system, they worried about the budgetary, contractual, and political implications that would arise from correcting it. As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

136.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr have an ongoing, supervisory duty over Kent County - MDHHS and the proper operations of MiSACWIS in their roles as the administrative staff and custodians of Kent County - MDHHS to guarantee policies, systems and practices that would have safeguarded Plaintiff's civil rights and the civil rights of all parents in Kent County.  This includes an ongoing duty to assess compliance with unambiguous federal statutes, as well as the state laws and manuals that implement those requirements.

137.     Those duties include an ongoing duty to report these matters to Defendants MDHHS, Gordon, McCall and Cheung.

138.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr were indifferent to those duties and the defects in MiSACWIS because instead of mitigating the risk of harm caused by the defective system, they worried about the budgetary, contractual, hierarchical and political implications that would arise from correcting it.  As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

139.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr have an ongoing, supervisory duty over Defendants Kent County – MDHHS, Bolden, Kuzma, Shackleton, Kuchan, Luster, Williams and Desmarais.  This includes an ongoing duty to assess their performance and compliance with unambiguous federal statutes, as well as the state laws and manuals that implement those requirements.

140.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr recklessly and/or knowingly violated provisions of the federal statutes that are unambiguous, intended to protect families and children, and mandatory, as well as the state laws and manuals that implement the federal requirements and provide a presumptively constitutional plan that balances the need to protect abused or neglected children against the constitutional rights of families.

141.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr were indifferent to those duties and the performance of their subordinates because instead of mitigating the risk of harm caused by their subordinates, they worried about the budgetary, contractual, union, and political implications that would arise from correcting it.  As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

142.     Defendants Bolden, Kuzma, Shackleton and Desmarais have or had an ongoing, supervisory duty over Defendants Kuchan, Luster and Williams.  This includes an ongoing duty to assess their performance and compliance with unambiguous federal statutes, as well as the state laws and manuals that implement those requirements.

143.     Defendants Bolden, Kuzma, Shackleton and Desmarais recklessly and/or knowingly violated provisions of the federal statutes that are unambiguous, intended to protect families and children, and mandatory, as well as the state laws and manuals that

implement the federal requirements and provide a presumptively constitutional plan that balances the need to protect abused or neglected children against the constitutional rights of families.

144.     Defendants Bolden, Kuzma, Shackleton and Desmarais were indifferent to those duties and the performance of their subordinates because instead of mitigating the risk of harm caused by their subordinates, they worried about the budgetary, contractual, union, and political implications that would arise from correcting it.  As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

145.     Defendants YWCA West Central Michigan, Cottrell and Paulson recklessly and/or knowingly violated provisions of the federal statutes that are unambiguous, intended to protect families and children, and mandatory, as well as the state laws and manuals that implement the federal requirements and provide a presumptively constitutional plan that balances the need to protect abused or neglected children against the constitutional rights of families.

146.     Defendants YWCA West Central Michigan, Cottrell and Paulson were indifferent to those duties because instead of mitigating the risk of harm caused by their acts, they worried about the budgetary, contractual, and political implications that would arise from correcting it.  As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

147.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr have an ongoing, supervisory duty over their agents and/or contractors Defendants YWCA West Central Michigan, Cottrell and Paulson.  This includes an ongoing duty to

assess their performance and compliance with unambiguous federal statutes, as well as the state laws, manuals and contract awards that implement those requirements.

148.     Defendants Kent County – MDHHS, Fountain, Selden-Johnson, and Orr were indifferent to those duties and the performance of their agents because instead of mitigating the risk of harm caused by their agents, they worried about the budgetary, contractual, and political implications that would arise from correcting it.  As a result, Plaintiff, and Michigan families, were lured into a false sense of security.

149.     While not every violation of these statutes and regulations constitutes a civil rights violation, these statutes and regulations gave Defendants ample notice on the likely illegality of their actions.

150.     At all times, each of the Defendants acted under color of law by virtue of being an employee, division, or an agent/contract agency of Defendants MDHHS and Kent County – MDHHS.

151.     In this case, the Defendants ignored and rejected virtually all aspects of the regulatory scheme, resulting in illegal detention, harassment, retaliation, warrantless search, selective enforcement and a private right of action under 42 U.S.C. § 1983.

152.     As a result of Defendants' conduct, Plaintiff has been harmed and deprived of both federal and state-created liberty or property rights without due process of law in violation of his constitutional rights.

153.     Given Defendants' repeated and uninterrupted misconduct toward Plaintiff – which each time resulted in administrative vindication for Plaintiff – qualified immunity cannot shield Defendants' actions as simply mistaken interpretations of law and constitutional protections.

154.    Plaintiff has a justifiable and actual fear of continuing to be targeted by Defendants and having his constitutional rights and his relationships with his children harmed. With reasonable probability, the prospective, feared, and anticipated consequences may be expected to flow from the past harm.

155.    Plaintiff will incur future expenses for administrative, legal, lost work, emotional duress, and medical treatment and, as a result, seek payment of the related expenses as an element of the consequential damages.

156.    The degree of probability that the Plaintiff will continue to be targeted is such that there is a reasonable certainty that such expenses will arise at some future date, thus entitling Plaintiff to recover from Defendants for apprehended consequences that are not presently manifested.

157.    A rational basis exists between Plaintiff's exposure to the acts by Defendants described herein, and Plaintiff's currently manifested fear of continuing to be targeted in the future.

## **LEGAL CLAIMS**

158.    Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

### COUNT 1:

### Defendants' actions violated Plaintiff's
### Constitutional Right To Parent

159.    Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

160.     Plaintiff had and has a fundamental, Constitutional right to make decisions concerning the care, custody, and control of his children. *Meyer v Nebraska*, 262 US 390, 399-400; 43 S Ct 625; 67 L Ed 1042 (1923).

161.     Defendants individually and jointly violated Plaintiff's Constitutional rights to parent.

COUNT 2:

Defendants' actions violated Plaintiff's<br>1st Amendment rights.

162.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

163.     Defendants Bolden, Kuzma, Shackleton, Demarais, Kuchan, Luster, Williams and Kent County – MDHHS, and YWCA of West Central Michigan, Cottrell and Paulson, violated Plaintiff's First Amendment right to petition the government for redress of grievances by retaliating against him for his efforts with the Ombudsman, his expunction requests, and challenges of his parenting time supervision. This retaliation led to three false substantiations of child abuse and neglect.

164.     Defendants Bolden, Kuzma, Shackleton, Demarais, Kuchan, Luster, Williams and Kent County – MDHHS violated Plaintiff's First Amendment right to petition the government for redress of grievances by retaliating against him for his efforts to pursue the reports of child abuse inflicted upon his children by their mother.

165.     Defendants Bolden, Kuzma, Shackleton, Kuchan, Luster and Kent County – MDHHS, and YWCA of West Central Michigan and Paulson, violated Plaintiff's First Amendment right to speak to and with his children.

166.     Further, Bolden, Kuchan, Luster and Williams arbitrarily disliked Plaintiff as compared to the children's mother – or other similarly situated parents -- which motivated their retaliation.  This retaliation led to the false substantiation of mental injury and threatened harm in violation of the laws and policies underlying such substantiation.

167.     Defendants Shackleton, Luster, Demarais and Kent County – MDHHS, YWCA of West Central Michigan, Cottrell and Paulson had no objectively reasonable basis for their capricious and arbitrary parenting time rules and therefore violated Plaintiff's First Amendment right to free speech and assembly by restricting his communications and contact with his children.

COUNT 3:

Defendants' actions violated Plaintiff's
4th Amendment right to unreasonable search and seizure

168.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

169.     Defendants Shackleton, Luster, Kent County – MDHHS, YWCA of West Central Michigan, Cottrell and Paulson had no objectively reasonable basis for their capricious and arbitrary parenting time rules.

170.     Defendants Shackleton, Luster, Kent County – MDHHS, YWCA of West Central Michigan, Cottrell and Paulson subjected Plaintiff to unwarranted searches of his bags, phones and other personal property.

171.     Defendants Kuchan, Bolden and Kent County – MDHHS wrongfully demanded that Plaintiff submit to a psychological evaluation, without a warrant or court order, and threatened that if he refused there would be consequences as a basis for substantiating the investigation and the possible removal of his children.

172.     Defendants Shelbie Williams and Kent County – MDHHS wrongfully demanded that Plaintiff submit to a drug screen on July 10, 2019, without a warrant or court order, and threatened that if he refused to submit to such drug screen they would use it as a basis for substantiating the investigation and the possible removal of his children.

173.     No special needs or exigent circumstances existed during any of these searches.

174.     Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure of his belongings was violated by the Defendants.

175.     Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure of his person was violated by the Defendants.


COUNT 4:

Defendants' actions violated the Plaintiff's
5th Amendment right against self-incrimination

176.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

177.     Defendants Kuchan, Bolden and Kent County – MDHHS wrongfully demanded that Plaintiff submit to a psychological evaluation, without a warrant or court order, and threatened that if he refused there would be consequences as a basis for substantiating the investigation and the possible removal of his children.

178.     Defendants Shelbie Williams and Kent County – MDHHS wrongfully demanded that Plaintiff submit to a drug screen on July 10, 2019, without a warrant or court order, and threatened that if he refused to submit to such drug screen they would

use it as a basis for substantiating the investigation and the possible removal of his children.

179.     No special needs or exigent circumstances existed during any of these searches.

180.     Plaintiff's Fifth Amendment right to be free from self-incrimination was violated by the Defendants.

COUNT 5:

Defendants' actions violated the Plaintiff's
14th Amendment right to procedural and substantive due process

181.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

182.     Throughout Plaintiff's ordeal, Defendants have trampled on his rights to procedural and substantive due process.  Three times Plaintiff was substantiated for child abuse or neglect and placed on Central Registry.  Three times Plaintiff was vindicated after his demands for due process.

183.     Defendants deprived Plaintiff of equal protection and due process by failing to comply with the applicable state and federal laws and regulations, which provide a presumptively constitutional framework that balances the need to protect neglected or abused children against the constitutional rights to family relations, including Plaintiff's right to raise his children.  Defendants removed Plaintiff's children from his care for approximately 5-months violating the oldest of his "fundamental liberty interests," *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000).

184.     Defendants deprived Plaintiff of equal protection and due process by failing to comply with the applicable state and federal laws and regulations, through their disparate treatment of Plaintiff as compared to their treatment of the children's mother and other similarly situated parents.

185.     Defendants deprived Plaintiff of equal protection and due process by submitting false or misleading facts, law and policies to the trial court and the Kent County prosecutor during the course of investigations and court proceedings that directly caused the courts and prosecuting authority to take errant action and erroneously make findings of fact and law contrary to Plaintiff.

186.     Defendants deprived Plaintiff of equal protection and due process by placing him on Central Registry – three separate occasions – which caused a stigma and jeopardized his abilities to participate in coaching, school, 4H and other activities with his children, and also jeopardized employment opportunities.

187.     Defendants deprived Plaintiff of equal protection and due process by selectively targeting him.

COUNT 6:
Defendants' actions constituted a
broad-based conspiracy to violate the Plaintiff's civil rights

188.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

189.     Given the Defendants' broad-ranging accusations and failures against Plaintiff it is not possible to justify Defendants' actions as simply mistaken interpretations of law or as individual acts.  Instead, Defendants repeatedly did whatever

it took to create a case against Plaintiff, in the absence of rational belief or probable cause. Such efforts constitute a conspiracy under 42 U.S.C. § 1983.

## COUNT 7:
## Negligence and Gross Negligence

190.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

191.     Defendants, and each of them individually, breached their duty of reasonable care which a reasonably prudent person should use under the circumstances, by failing to comply with the applicable state and federal laws and regulations, which provide a presumptively constitutional framework that balances the need to protect neglected or abused children against the constitutional rights to family relations, including Plaintiff's right to raise his children.

192.     Defendants MDHHS, Gordon, McCall, Cheung, Kent County – MDHHS, Fountain, Selden-Johnson, and Orr were indifferent to those duties and the defects in MiSACWIS because as owner and operator of MiSACWIS, owed Plaintiff a cognizable duty to exercise reasonable care in accurately reporting information related to Plaintiff's contact and circumstances with Defendants.

193.     Defendants demonstrated a substantial lack of concern as to whether injury would occur to Plaintiff as a result of Defendants acts and as a result of the errors in MiSACWIS.

194.     Defendants, and each of them, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally created the immediate and continuing errors in MiSACWIS.

195.     Furthermore, Defendants failed to take reasonable, adequate and sufficient steps or action to eliminate, correct, or remedy any errors with MiSACWIS after they occurred.

196.     Defendants' breaches of their duties were direct and proximate causes of Plaintiff's damages and the imminent, substantial and impending harm to Plaintiff.

COUNT 8:
Defamation

197.     Each and every allegation of the Complaint is incorporated as if fully set forth for each count and legal claim.

198.     Defendants, and each of them individually, made statements regarding Plaintiff, his parenting, his personality, his mental health, and his circumstances with Defendants to a third person by writing, database, and words.

199.     The statements were regarding the Plaintiff.

200.     The statements were false in some material respect.

201.     The statements had a tendency to harm the Plaintiff's reputation.

202.     As a result of the statements, the Plaintiff suffered damage.

**REQUESTED RELIEF**

Each of the above counts constitutes a separate violation of 42 U.S.C. § 1983. For each of these violations, Plaintiff Troy William Tingley seeks to recover the following:

1.     General damages in an amount to be determined by a jury;

2.     Compensatory damages in an amount to be determined by a jury;

3.     Punitive damages in an amount to be determined by a jury;

4.     Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988;

5.      Any further relief that may be appropriate.

## JURY DEMAND

Each of Plaintiff's actions are triable before a jury, and he hereby makes his demand for jury trial.

Dated: February 3, 2020.                    s/ Christopher M. Wirth (P70174)
CORE LEGAL PLC
250 Monroe Avenue NW, Suite 400
Grand Rapids, MI 49503
(616) 855-2145
Attorney for Plaintiff