UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Southern Division

| | |
|---|---|
| TROY WILLIAM TINGLEY | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | |
| vs | Case No. 1:20-cv-00094 |
| | Honorable Janet T. Neff |
| STATE OF MIGHIGAN, et al., | Magistrate Judge Sally J. Berens |
| Defendants | |

| | |
|---|---|
| CHRISTOPHER M. WIRTH (P70174) | Dan E. Bylenga (P32154) |
| Attorney for Plaintiff | Andrew R. McInnis (P83626) |
| CORE LEGAL PLC | Attorneys for Defendants YWCA and |
| 250 Monroe Avenue NW, Suite 400 | Ruthie Paulson |
| Grand Rapids, MI 49503 | CHASE BYLENGA HULST, PLLC |
| (616) 855-2145 | 25 Division Ave. S., Suite 500 |
| cwirth@corelegalplc.com | Grand Rapids, MI 49503 |
| | (616) 608-3061 |
| | dan@chasebylenga.com |
| | andrew@chasebylenga.com |
| Neil A. Giovanatti (P82305) | |
| Cassandra Drysdale-Crown (P64108) | |
| Assistant Attorneys General | Nicole Luster |
| Attorneys for State Defendants | Defendant |
| Health, Education, & Family Services Division | Pro Se |
| P.O. Box 30758 | |
| Lansing, MI 48909 | Cindy L. Shackerton |
| (517) 335-7603 | Defendant |
| giovanattin@michigan.gov | Pro se |
| drysdalecrownc@michigan.gov | |

**DEFENDANTS YWCA WEST CENTRAL MICHIGAN AND RUTHIE PALSON'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**INTRODUCTION**

Plaintiff's frustrations are apparent and obvious. His life has been characterized by family and domestic strife for nearly a decade, ultimately culminating in this lawsuit. However, his frustration does not give rise to well-supported causes of action. Defendants YWCA West Central Michigan and Ruthie Paulson (collectively, the "YMCA Defendants") had little to nothing to do with the events and sequences that surrounded Plaintiff's strife. Indeed, the YWCA Defendants' role in this litigation was limited to supervising parental visitations by Plaintiff, pursuant to court order and stipulation, roughly twice a week for a period of five months. The reality is that, despite Plaintiff's attempts to point the proverbial finger of blame, his frustrations are not actionable as against the YWCA Defendants and he has failed to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6)

**STATEMENT OF FACTS**

The YWCA is a private, non-profit organization that offers services that respond to issues of domestic abuse, sexual assault, and child sexual abuse. It is on contract with the State of Michigan Department of Health and Human Services ("MDHHS") to provide Supportive Visitation Services through its "Safe Connections" program. Pursuant to the Safe Connections program, the YWCA provides a safe environment through which parents may visit with their children pursuant to court order. Safe Connections is an independent program of the YMCA and is operated pursuant to internal policies and protocols. During the visits, the YWCA and its staff have the discretion to provide supportive parenting instructions and encourage parenting skills that promote a healthy parent-child relationship. When a case is referred to the YWCA by a Court or MDHHS, the YWCA receives permission to release information to MDHHS from the parent. The YWCA is paid by MDHHS for its services and may be reimbursed for certain expenses and costs

incurred. From May 25, 2016 until October 31, 2018, Ms. Ruthie Paulson served as the Safe Connections Manager for the YWCA.

Specific to the case presently before the Court, MDDHS "selected Defendant YWCA to provide supervision of Plaintiff's parenting time through its Safe Connections program." Plaintiff's First Amended Complaint, ¶ 378. On September 28, 2017, Plaintiff and his ex-wife stipulated to the entry of a Court Order in the Kent County 17th Circuit Court, which provided:

> **The supervised parenting time for Troy Tingley previously ordered in parallel cases 17-51149-NA-104111401 and 17-51150-NA-104111402 shall continue until October 12, 2017, at which time the prior parenting order entered in this case shall be in effect.**

The supervised parenting time was then referred to the YWCA's safe connection's program by the Kent County Department of Human Services, as agreed to by Plaintiff. YWCA facilitated the supervision of parental visitation time for two hours per week between May 5, 2017 and October 12, 2017. Plaintiff's First Amended Complaint, ¶ 393. The YWCA acted pursuant to its contract with MDDHS and the policies attached thereto, but also imposed some of its own rules and conditions pursuant to its Safe Connections Handbook, a copy of which was acknowledged by Plaintiff within the first couple weeks of the YWCA provision of supervised visits. The YWCA Defendants had no say or impact on MDDHS' or its actors' decision to remove Plaintiff's children from his care—it merely acted as a contractor to provide supervisions services.

## STANDARD OF REVIEW

YWCA Defendants bring their motion pursuant to Fed. R. Civ. Pro. 12(b)(6). A motion under Rule 12(b)(6) is justified where there is a "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a Court must "accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A Court need not, however, accept legal conclusions as true; indeed, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). That is, "plaintiff must provide the grounds for its entitlement to relief and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal citation omitted), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This is a two-step process: first, the Court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth"; second, the Court "consider[s] the factual allegations in [the] complaint to determine if [it] plausibly suggest[s] an entitlement to relief." *Ashcroft*, 556 U.S. at 680, 681.

## ARGUMENT

Plaintiff alleges that the YWCA Defendants committed § 1983 violations by infringing upon his constitutional right to parent and his right to procedural and substantive due process, that Ms. Paulson violated his first amendment rights, and that the YWCA Defendants were engaged in a broad-based civil conspiracy to deprive him of his constitutional rights.[1] However, Plaintiff's claims are riddled with legal conclusions that are unsupported by allegations of fact. That is, Plaintiff has failed to assert well pleaded allegations. See *Bredesen*, 500 F.3d at 527. Accordingly, for the reasons set forth below, Plaintiff has failed to state a claim upon which relief can be granted against YWCA Defendants.

### I.     YWCA Defendants are not "state actors" under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

---

[1] Plaintiff names at least one of the YWCA Defendants in Counts 1, 2, 4, 6, and 7. However, the YWCA Defendants are only specifically referenced in Count 4 and, even then, in a conclusory fashion.

4

>the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* at 50, quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982).   "[T]hus, liability [under § 1983] attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Nat'l Collegiate Ath. Ass'n. v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988), quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961).

A private entity is a "state actor" only if "there is a such a 'close nexus between the state and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001), quoting *Jackson v. Met. Edison Co.*, 419 U.S.C 345, 351, 95 S. Ct. 449, 42 L. Ed. 2d. 477 (1974).  In other words, the private action "must be fairly attributable to the state." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir., 2003).  The United States Court of Appeals for the Sixth Circuit (hereinafter the "Sixth Circuit") adheres to three separate tests under which courts may determine that a private entity is a state actor: (1) the "public functions test"; (2) the "state compulsion test"; and (3) the "nexus test." *Brent v. Wayne Ct. Dep't of Human Servs.*, 901 F.3d 656, 676 (2018).

First, "[u]nder the public function test, a private party is a state actor if he exercises powers traditionally reserved exclusively to the state.  The public function test has been interpreted

5

narrowly. Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action." *Chapman v. Higbee Co.*, 319 F.3d 825, 833-834 (6th Cir. 2003) (internal citations omitted). The public function does not consider whether the power has *traditionally* been performed by governments but rather whether it has been *exclusively reserved* to the government. *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 158, 98 S. Ct. 1729, 56 L. Ed. 2d. 185 (1978). The "Sixth Circuit has held that "[p]roviding counseling services to teenagers is not a power reserved exclusively to the state," even where the counseling services were court ordered. *Reguli v. Guffee*, 371 Fed. Appx. 590, 600 (6th Cir. 2010). In *Kolley v. Adult Protective Servs.*, 786 F. Supp. 2d 1277, 1312 (E.D. Mich. 2011), the United States District Court for the Eastern District of Michigan concluded that a Plaintiff failed to adequately allege that services provided by a group home, staffed with social workers and care givers who served physically disabled residents placed through the probate court process, were state actors where the Plaintiff failed to explain how these services were "traditionally reserved exclusively to the state." The Court further clarified that "courts have concluded that actions like performing forensic interviews and providing court-ordered counseling services do not meet the standard." *Id.*, citing *Reguli*, 371 F. App'x at 600; *Molnar v. Care House*, 574 F. Supp 2d. 772, 774 (E.D. Mich, 2008).

Second, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* The provision of services for a state does not turn an entity into a state actor. *Reguli*, 371 Fed. Appx. at 600. Moreover, "[t]he actions of a private entity do not become state action merely because the government provides substantial

6

funding to the private party." *Wolotsky*, 960 F.2d at 1336; see also *Rendall-Baker v. Kohn*, 457 U.S. 830, 840-41, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) (holding a private school was not a state actor despite the fact that the school received up to 99% of its funding from public sources).

Third, the nexus test "requires a plaintiff to 'demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself.'" *Campbell v. PMI Food Group, Inc.*, 509 F.3d 776, 784 (6th Cir. 2007), quoting *Chapman*, 419 F.3d at 834. "Merely because a business is subject to state regulation does not by itself convert its action into state action." *Wolotsky*, 960 F.2d at 1335; see also *Blum*, 457 U.S. at 1004. In *Molnar*, the United States District Court for the Eastern District of Michigan held that "a private non-profit agency engaged solely in the advocacy, prevention, intervention and treatment of child abuse and neglect" for police forces across Oakland County was not a state actor where "there [was] no evidence of record suggesting that the police or the prosecutor's office supervised, directed or otherwise participated in [an] interview [of the plaintiff's daughter]." 574 F. Supp. at 785-86. Similarly, the Sixth Circuit held that a private, non-profit counseling program was not a state actor even where it counseled a juvenile pursuant to court order, occupied a guardianship role, and reported information to the court. *Reguli*, 371 Fed. Appx. at 601-02; see also *Kolley*, 786 F. Supp. 2d at 1311 (holding a private, non-profit group home where a minor resided pursuant to probate court order was not a state actor because there was no joint activity with law enforcement, but that a private non-profit counseling organization could potentially be a state actor where police officers escorted the minor and attended the counseling sessions); *but see Brent*, 901 F.3d at 677 (holding plaintiff did plausibly allege state action where a non-profit organization fulfilled Michigan's constitutional duties by supervising

7

foster placements, making recommendations concerning care and custody, and developing service plans).

In the present case, Plaintiff fails to adequately plead that the YWCA Defendants were state actors and, therefore, YWCA Defendants are entitled to dismissal under Fed. R. Civ. Pro. 12(b)(6). That is, in his Complaint, Plaintiff asserts "labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. Specifically, Plaintiff blanketly asserts that the YWCA Defendants, as agents or contractors of the State of Michigan and/or Kent County, were engaged in a "governmental function." Plaintiff's First Amended Complaint, ¶ 531. Plaintiff does not provide any facts in support of this legal conclusion and, further, does not allege that the State of Michigan compelled the YWCA's actions, and does not contend that there was a sufficiently close nexus between the state and the YWCA Defendants.

First, Plaintiff does not adequately allege that the YWCA Defendants were engaged in an exclusive public function. As alleged by Plaintiff, the YWCA Defendants involvement was limited to hour long supervised parenting time services over the course of five months as a contractor for the State of Michigan. Plaintiff's First Amended Complaint, ¶ 528. However, supervision of parental rights visits not analogous to holding elections, exercising eminent domain, or operating a company-owned town. *Chapman*, 319 F.3d at 833-834. Rather, its services are most analogous to counseling, which "is not a power exclusively reserved to the state." *Reguli*, 371 Fed. Appx. 59. [2] Similar to the Plaintiff in *Kolley*, 786 F. Supp 2d at 1312, Plaintiff has failed

---

[2] In "Plaintiff's Response to YWCA's Pre-motion Conference Request," Plaintiff asserts that shortly after this Court's decision in *Jameson v. Child Protective Servs.*, 2017 U.S. Dist. Lexis 166988 (W.D. Mich. 2017), "MDHHS delegated the public function of all foster care services in Kent County to contract agencies, like the YWCA." But this is irrelevant, as *Jameson* was decided in October 2017, which is roughly the exact time YWCA Defendants' involvement in this matter ended. That is, the measures Plaintiff emphasizes were not involved in this case and have no impact on the state actor analysis.

to assert allegations regarding how such services are "traditionally reserved exclusively to the state," and, thus, fails to state a claim. See also *Wittstock*, 330 F.3d at 902 (stating the Courts "conduct[] a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing").

Second, Plaintiff does not allege that the YWCA's actions were compelled by the state. Nor could he, as Plaintiff stipulated to the provision of supervised parenting visits in his custody dispute with his wife until October 12, 2017—the exact date the YWCA ceased providing such services. Moreover, as acknowledged by Plaintiff, the YWCA Defendants acted pursuant to a voluntary contract with the MDHHS. That is, the YWCA Defendants voluntarily provided supervision services for the state but were not "coerced by the state in [its] provision of services." *Reguli*, 371 Fed. Appx. at 600. In fact, Plaintiff alleges the *opposite* of compulsion—that the YWCA defendants acted pursuant to its own "Safe Connections Handbook", "other rules", "additional rules", and "own internal policies." Plaintiff's First Amended Complaint, ¶¶ 402; 408; 412; 420; and 537. Accordingly, like in *Reguli*, Plaintiff failed to set forth a single indicium of evidence that the actions YWCA Defendants were controlled or coerced by the State of Michigan. *Id.*

Finally, Plaintiff fails to allege that there is a "sufficiently close nexus" between the YWCA and the State of Michigan to transform the non-profit, private organization into a state actor. There was no joint-activity between YWCA Defendants and the state—the visits took place on private property with no state representative present. Thus, the present circumstances are directly analogous to *Molnar*, 574 F. Supp. 2d. at 785; *Kolley*, 786 F. Supp. 2d. at 1310; and *Reguli*, 371 Fed. Appx. at 600, where courts concluded that counseling or supervision without government involvement does not give rise to state action. This is not an instance, such as in *Brent*, 901 F.3d

9

at 668, 677, where the Plaintiff's children were placed and resided in a "residential care facility licensed and regulated by the State of Michigan for the care, treatment, and detainment of court and state wards" that facilitated foster treatment. Rather, the YWCA Defendants' role in the present litigation was limited to supervising two, hour-long private parental visits per week *that plaintiff agreed to*. Plaintiff fails to adequately allege a nexus between Defendants.

In sum, Plaintiff has not sufficiently pled allegations in support of his legal conclusion that YWCA Defendants acted under the color of law.[3] Based upon all factual allegations asserted by Plaintiff, there is simply no basis to conclude that the YWCA Defendants were state actors and, therefore, Plaintiff has failed to state a claim upon which relief can be granted.

## II.     Plaintiff failed to adequately plead civil conspiracy

"[A] private individual who conspires with public officials to violate one's constitutional rights will be considered to have acted under color of state law under Section 1983." *Hickey v. New Castle Cty.*, 428 F. Supp. 606, 611 (D. Del. 1977), citing *Adickes v. Kress and Company*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) (stating "a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983."). However, a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983). That is, a claimant cannot presume that alleged constitutional deficiencies are the byproduct of a conspiracy; to present a cognizable claim of conspiracy, one must allege specific facts that support an agreement to deprive him or her of his or her constitutional rights. *Osuch v. Gregory*, 303 F. Supp. 2d. 189, 196 (D. Conn. 2004).

---

[3] At least two courts have determined that various YWCA's are not state actors for purposes of § 1983. See *Jermano v. Taylor*, 2013 U.S. Dist. Lexis 45612 (E.D. Mich. 2013); *Eubanks v. YWCA*, 2013 U.S. Dist. Lexis. 126852 (M.D. Pa. 2013).

In the present case, Plaintiff asserts that there is "a broad based conspiracy to violate the Plaintiff's civil rights." Plaintiff's First Amended Complaint, p. 71, "Count 6". But the entirety of the allegation is a two-sentence assertion that all defendants conspired together because of the repeated accusations levied against him. Plaintiff does not identify any agreement, the YWCA Defendants' role or participation in the alleged conspiracy, or even identify its purpose. Accordingly, the "complaint contain[s] only conclusory, vague, or general allegations of a conspiracy . . . [and] cannot withstand a motion to dismiss." *Sommer*, 709 F.2d at 175.

### III. Assuming *arguendo* YWCA Defendants are state actors, they are entitled to qualified immunity

"Qualified immunity under federal law 'is immunity from suit.'" *Brent*, 901 F.3d at 691, quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 85 L. Ed. 2d 411 (1985). "Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged conduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). "Whether a defendant is entitled to absolute or qualified immunity from liability under 42 U.S.C. § 1983 is a legal question . . . ." *Id.* at 843.

"'A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."'" *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015), quoting *Reichle* v. *Howards*, 566 U.S. ___, 132 S. Ct. 2088, 182 L. Ed. 2d 985, 989 (2012). In so deciding, a court must determine whether "the violative nature of *particular* conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 149 L. Ed. 2d 1149 (2011). The Supreme Court has recognized the difficult decisions that public officials face in the heat of the moment. *Mullenix*, 136 S. Ct. at 308. Thus, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"

11

*Mullenix*, 136 S. Ct. at 308, quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).  Thus, identifying a clearly established right is often difficult standard to satisfy.  For example, in *Barber*, 809 F.3d at 846, the Sixth Circuit held that a Child Protective Services worker was entitled to qualified immunity even where searched the Plaintiff's home without a warrant.  Similarly, in *Roe v. Tex Dep't of Protective & Regulatory Servs.*, 299 F.3d 395 (5th Cir. 2002), the Fifth Circuit held that a social worker was entitled to qualified immunity where she strip and cavity searched a 13-year-old.

By invoking qualified immunity, the YWCA Defendants have shifted the burden to Plaintiff to sufficiently plead allegations that support the conclusion that the YWCA Defendants violated a constitutional right that was clearly established at the time of the YWCA Defendants' alleged conduct.  *Barber*, 809 F.3d at 844.  That is, Plaintiff must show that the YWCA Defendants acted "incompetent[ly]" or "knowingly violate[d] the law."  *Malley*, 475 U.S. at 341.  Plaintiff has failed to identify any constitutional violations on the part of the YWCA Defendants, much less any violation that is clearly established.

First, Plaintiff's allegations of constitutional violations by the YWCA defendants are conclusory and fail to adequately state a claim.  See *Ashcroft*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Indeed, Plaintiff fails to expound upon how the YWCA's conduct constitutes constitutional violations whatsoever.  Rather, he merely groups the YWCA Defendants into various counts without identifying any specific conduct on the part of the YWCA or its employees.  These are conclusory statements that lack any factual founding.  In reality, YWCA Defendants' role in this matter was limited to the agreed upon supervision of Plaintiff's parenting visits for a period of five months.  Plaintiff cannot identify a single action taken by the YWCA Defendants

that constituted a suppression of his right to parent, due process rights, or his right to freedom of speech.

Second, even if YWCA Defendants committed one of these blanketly asserted constitutional violations, they did not violate a clearly established right. See *Malley*, 475 U.S. at 341. That is, YWCA Defendants did not act "incompetent[ly]" or "knowingly violate the law." *Id.* The YWCA is a private, non-profit organization. Its employees are employed and paid by the YWCA. Under no circumstances did the YWCA Defendants believe they were acting under the "color of law." 42 U.S.C. § 1983. They were not abusing a badge of power or place of authority; they were merely providing parenting time supervision pursuant to Plaintiff's stipulated court order, its contract with MDHHS, and their own internal policies. In other words, YWCA Defendants believed themselves to be a private organization and private individuals that, in good-faith, believed they were not confided by the bill of rights and the fourteenth amendment and, therefore, could not knowingly violate them. Qualified immunity has been awarded in significantly more drastic circumstances. See *Barber*, 809 F.3d at 846 (warrantless search of a house); *Roe*, 299 F.3d at 403 (strip and cavity search of a 13-year-old). There is no basis to conclude YWCA defendants violated a clearly established right. Accordingly, YWCA defendants are entitled to qualified immunity from suit and must be dismissed from this frivolous action. *Brent*, 901 F.3d at 691.

## CONCLUSION

This is retaliatory litigation. After bullying and intimidating YWCA Defendants for five months, Plaintiff now feigns injury as an aggrieved party, seeking to point fingers anywhere but at himself. Unsurprisingly, his allegations are "threadbare" and "conclusory." *Ashcroft*, 556 U.S. at 678. Indeed, in each claim, he merely asserts "a formulaic recitation of the elements of a cause

of action." *Twombly*, 550 U.S. at 555. He does not sufficiently assert that YWCA Defendants are state actors for purposes of § 1983; fails to identify a single cause of action taken by YWCA defendants; and does not identify a clearly established right the YWCA Defendants violated. For these reasons, he has failed to state a claim upon which relief can be granted and YWCA Defendants are entitled to dismissal under Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted,

Chase Bylenga Hulst, PLLC

Dated: 08/26/2020

By:/s/ *Dan E. Bylenga, Jr.*
Dan E. Bylenga, Jr. (P32154)
Attorney for YWCA Defendants
25 Division Ave S., Suite 500
Grand Rapids, MI 49503