UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY WILLIAM TINGLEY,

            Plaintiff,                         Hon. Hala Y. Jarbou

v.                                        Case No. 1:20-cv-94

STATE OF MICHIGAN, et al.,

            Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

On February 3, 2020, Plaintiff Troy Tingley filed a complaint against numerous Defendants asserting federal- and state-law claims arising out of several child welfare investigations of Tingley during the course of a child custody proceeding. Tingley sued the State of Michigan; the Michigan Department of Health & Human Services (MDHHS); the Kent County Department of Health and Human Services (Kent County DHHS); MDHHS Director Robert Gordon; Herman McCall, the Executive Director of the Michigan Children's Services Agency (MCSA); JooYeun Chang, the Senior Deputy Director of MCSA; Savator Selden-Johnson, the Child Welfare Director for Kent County-MDHHS; Scott Orr, the Supervisor of Child Protective Services (CPS) for Kent County-MDHHS; Kent County-MDHHS CPS Ongoing Supervisors Nyela Bolden, Jeremy Novosad, Matt Kuzma, Cindy Shackleton, and Keri Desmarais; Kent County-MDHHS CPS caseworkers Daniel Kuchan, Nichole Luster, and Shelbie Williams; the YWCA West Central Michigan; and YWCA employees Tom Cottrell and Ruthie Paulson.

---

[1] Although Tingley requests oral argument, the Court determines that the parties' briefs have adequately developed the issues, and oral argument is unnecessary.

Tingley filed an amended complaint on August 4, 2020, omitting the State of Michigan, MDHHS, Kent County DHHS, and Cottrell as Defendants.[2] Tingley's amended complaint spans 78 pages and 639 paragraphs. But the actual counts are conclusory and bare bones, leaving it to the Court to piece together his theory of each claim. Tingley alleges the following federal claims in his amended complaint: (1) violation of his constitutional right to parent (all Defendants); (2) violation of his rights to procedural and substantive due process under the Fourteenth Amendment (Count 2 against Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson; Count 3 against Defendants Gordon, McCall, and Cheung); (3) First Amendment retaliation (Count 4 against Defendant Luster; Count 5 against Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson); (4) conspiracy under 42 U.S.C. §§ 1983 and 1985 (Counts 6 and 7); and failure to supervise (Count 11). Tingly also asserts state-law claims of gross negligence (Count 8 against Defendants Gordon, McCall, and Cheung; Count 9 against Williams and Desmarais) and intentional infliction of emotional distress against Defendants Williams and Desmarais (Count 10).[3]

This matter is before the Court on the State Defendants' Motion to Dismiss Plaintiff's Amended Complaint.[4] (ECF No. 53.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and that the federal-law

---

[2] Defendants YWCA and Ruthie Paulson were dismissed from the case by stipulated order entered on October 30, 2020. (ECF No. 71.)

[3] Defaults were entered against Defendants Shackleton and Luster on October 29, 2020. (ECF Nos. 69 and 70.)

[4] The State Defendants include Robert Gordon, Herman McCall, JooYeun Chang, Tracey Fountain, Savator Selden-Johnson, Scott Orr, Nyela Bolden, Jeremy Novosad, Matt Kuzma, Keri Desmarais, Daniel Kuchan, and Shelbie Williams. (PageID.805.)

claims against the State Defendants be **DISMISSED**. I further recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims. Finally, I recommend that the Court order Plaintiff to show cause why the Court should not exercise its discretion not to enter default judgments against defaulted Defendants Shackleton and Luster.

## I.      Amended Complaint

Tingley's claims primarily center around three different CPS investigations of alleged child abuse by Tingley, each of which various CPS investigators found to be substantiated and resulted in Tingley being placed on the Child Abuse and Neglect Central Registry (Central Registry). But the substantiations were all later reversed and expunged. These claims culminate in his allegation that Defendant Shackleton emailed Tingley that Defendant Luster was investigated and ultimately fired, at least in part, because she "sabotage[ed]" Tingley's case. (ECF No. 47 at PageID.752-54.) Tingley also complains of longstanding systematic problems and deficiencies in Michigan's Statewide Automated Child Welfare Information System (MiSACWIS)—the computer system that MDHHS employees use to track Michigan child welfare cases. (*Id*. at PageID.700, 754–57.)

In his response to the motion to dismiss, Tingley argues that his case centers on his disparate treatment because he was the dad and not the mom in the custody dispute. He makes reference to an equal protection claim (ECF No. 58 at PageID.893), but there is no equal protection claim pled in the amended complaint. Instead, he claims that "his right to be free from gender discrimination" is part of his procedural and substantive due process claims, as charged in Counts 2 and 3. (*Id*. at PageID.895.) Tingley has not moved to amend his complaint to add an equal protection claim.

### A.      Background

Tingley and his wife divorced in 2010 in Oakland County. They have two children, a boy and a girl. The custody case was transferred to Kent County in 2013. (ECF No. 47 at PageID.706.)

CPS first opened an investigation involving the children in July 2013 following a complaint by the boy that his mother had hit him with a belt and had tried to suffocate him with a pillow. (*Id.* at PageID.706–07.)

Tingley alleges that CPS opened another investigation on November 27, 2015, concerning the boy's allegation that the mother had physically abused him on November 22, 2015. After the initial on-call CPS investigator responded to the report from mandatory reporter Linda VandenBosch, D.O., and spoke with the boy and the girl, she transferred the investigation to Defendant Kuchan and his supervisor, Defendant Bolden. (*Id.* at PageID.708–710.) Tingley alleges that, during this investigation, Defendant Kuchan failed to speak with key witnesses, such as Dr. VandenBosch and Officer Schaff, the first law enforcement officer to interview the boy; failed to obtain a forensic child abuse medical exam; ignored key pieces of evidence, including Officer Schaff's video of his interview of the boy and a note from the boy's pediatrician's file indicating that within the last two months the boy had reported being afraid of physical punishment he received at his mother's house; and failed to preserve his notes of his interview and to make a video or audio recording in accordance with the Model Forensic Interview Protocol. (*Id.* at PageID.711–14.) Tingley further alleges that Defendants Kuchan and Bolden disregarded the mother's violation of court orders regarding her conduct toward the children and ignored the mother's established pattern of making false claims, staging scenes, and making false reports. (*Id.* at PageID.716–21.) On or about March 2, 2016, Defendants Kuchan and Bolden closed their investigation of the mother as unsubstantiated. (*Id.* at PageID.722.)

**B.     CPS's First Investigation of Tingley**

While investigating the allegation against the mother, Defendants Kuchan and Bolden asked Tingley to submit to a psychological evaluation, even though they were aware that Tingley and the mother had seen a certified forensic psychologist several years before during their divorce

4

and that the psychologist had opined in the custody case that she had no concerns about Tingley's parenting ability but had strong concerns about the mother's ability due to a closed-head injury. (PageID.723–24.) Tingley agreed to the evaluation and also consented to psychological evaluations of the children. Dr. William McInnis examined both children and provided his written report on March 2016. Dr. McInnis did not find that the children's psychological or emotional injuries resulted from a pattern of physical or verbal acts by Tingley. When he testified in the custody case, Dr. McInnis did not connect the children's diagnoses to Tingley; nor did he state that Tingley presented a significant risk of psychological or emotional injury or abuse to either child. (*Id.* at PageID.724–25.)

Tingley alleges that, on or about April 22, 2016, Defendants Kuchan and Bolden substantiated allegations of "mental injury and threatened harm to both children" against Tingley. He further alleges that the substantiation failed to comply with statutory and MDHHS policy bases for mental abuse substantiation. (*Id.* at PageID.726–27.) As a result of the substantiation, Tingley was placed on the Central Registry. At that point, Defendant Novosad took over the review of the investigation from Defendant Bolden. Although Tingley informed Defendant Novosad of the facts undermining the substantiation, Defendant Novosad failed to correct the investigation. The case was then transferred to Defendant Luster for ongoing services. (*Id.* at PageID.729.) Although Defendants Kuchan, Bolden, Novosad, Shackleton, and Luster discussed the case internally, Defendants Luster and Shackleton never investigated any of the claims underlying the substantiation, and Defendant Luster closed the case after about two months. (*Id.* at PageID.730–31.)

Tingley requested an administrative law proceeding to challenge the substantiation and to expunge the matter. He finally received correspondence acknowledging his request for a formal

hearing in March 2017. Thereafter, Tingley contacted the Michigan Office of Children's Ombudsman, which informed him that the MDHHS investigation did not support a substantiation for mental injury and threatened harm. After consultation with the Michigan Attorney General's Office, the MDHHS reversed the substantiation and granted the expunction without the need for an administrative hearing. (*Id.* at PageID.731–33.)

### C.    CPS's Second Investigation of Tingley

On April 12, 2017, Tingley filed a motion in the child custody case. Two days later, the mother filed a complaint with CPS alleging that Tingley physically abused the boy by grabbing and squeezing his arm during an argument over homework, which left two small bruises on his bicep. The investigation was led by Defendant Luster and supervised by Defendants Kuzma and Shackleton. (*Id.* at PageID.733.) Although Tingley and the boy told Defendant Luster that the boy was injured while playing in the woods with a friend after they caught a Canadian goose and provided a picture and "collateral contacts" (witnesses) to support Tingley's claim, and Tingley passed a polygraph test, Defendants Luster and Shackleton nonetheless substantiated the claim almost immediately without interviewing the collateral contacts. Defendants Luster, Kuzma, and Shackleton placed Tingley on the Central Registry. (*Id.* at PageID.733–35.)

Defendant Luster, with approval from Defendants Kuzma and Shackleton, filed a child welfare petition, which resulted in the removal of the children from Tingley's care. Tingley was then criminally charged with misdemeanor child abuse, but the "case was quickly dismissed"— five months later. (*Id.* at PageID.735–36, 740.) For a second time, Tingley requested an administrative proceeding to challenge his placement on the Central Registry and for expunction. The MDHHS reversed the substantiation and granted expunction, without an administrative hearing, after review by the Attorney General's Office. In connection with the dismissal of the criminal case, Tingley and the mother agreed to a safety plan. Tingley alleges that, while he fully

complied with its terms, the mother did not, but MDHHS did not substantiate the mother for her violations. (*Id.* at PageID.740–41.)

While the criminal case was pending, Defendants Luster, Shackleton, and Kuzma selected the YWCA to supervise Tingley's parenting time through its Safe Connections program. Tingley alleges that, although Defendants Luster, Shackleton, and Kuzma possessed reports indicating that he posed no threat to the children, and psychologists had expressed greater concerns regarding the mother, they allowed Tingley to see his children for only two hours each week with supervision from May 5, 2017, to October 12, 2017, did not allow him or make-up all of his parenting time, and blamed the YWCA and dismissed-Defendant Paulson for the lack of make-up parenting time. (*Id.* at PageID.742–44.) Tingley alleges that the YWCA ordinarily provided a document to parents containing parenting time rules and that he complied with the rules, but Defendant Luster imposed an "everchanging list of rules" for Tingley. Defendant Luster refused to provide the other rules to Tingley's counsel, and the YWCA and Paulsen did not provide the other rules to Tingley until four months after his parenting time had started, and he was already being accused of violating the rules. (*Id.* at PageID.745.)

### D.     CPS's Third Investigation of Tingley

On June 20, 2019, the mother made another report to CPS about Tingley. She alleged that, while the boy was driving a vehicle with Tingley as a passenger as part of the boy's driver's education training, Tingley, who was intoxicated, made him pull over and took over driving after the boy improperly navigated a round-about. The investigation was assigned to Defendant Williams. Tingley alleges that there was no evidence that he was intoxicated, that Defendant Williams interviewed only one collateral contact who confirmed that Tingley had consumed one beer with pizza hours earlier, and she relied on a decade-old order from the divorce case in finding that Tingley had a substance abuse problem. In addition, Defendant Williams attempted to coerce

7

Tingley to take a drug screen, which he refused. (*Id.* at PageID.748–49.) Nonetheless, Defendant Williams and her supervisor, Defendant Desmarais, reviewed the investigation and substantiated a claim against Tingley for improper supervision, resulting in his placement on the Central Registry for a third time. Tingley again sought an administrative hearing to remove and expunge the substantiation and placement on the Central Registry. The substantiation was reversed, and the expunction was granted, again without an administrative hearing. (*Id.* at PageID.750.)

## II. Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

### III.   Discussion

The State Defendants argue that they are entitled to dismissal on several grounds, including that Tingley's claims are barred by various types of immunity, his claims against some State Defendants are time barred, and he fails to state a claim upon which relief can be granted.

### A.      Federal Claims

### 1.      Eleventh Amendment Immunity

The State Defendants argue that Tingley's claims against them in their official and professional capacities are barred by the Eleventh Amendment. An official capacity suit is no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).

Tingley responds that his individual capacity claims against the individual Defendants survive an Eleventh Amendment challenge because he has also sued them in their individual capacities. While that is true, Tingley also sues Defendants in their official/professional capacities (ECF No. 47 at PageID.701–05), and such claims *do not* survive an Eleventh Amendment challenge. Accordingly, all official/professional capacity claims should be dismissed, including those against Defendants Luster and Shackleton.[5]

---

[5] Although the State Defendants' Motion was not brought on behalf of Defendants Luster and Shackleton, it does request dismissal of Tingley's claims against them in their official or

### 2.    Absolute Immunity

Defendants contend that Tingley's claims are barred by absolute immunity to the extent they are based on a CPS worker's testimony in a court proceeding or court filing that initiated a judicial proceeding against Tingley. Social workers are absolutely immune from liability when they act as "legal advocates" in initiating and pursuing child welfare proceedings. *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993)). "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). A social worker's absolute immunity also extends to "interactions with a court, such as 'testimony or recommendations given in court concerning the child's best interests as she saw the matter.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (quoting *Pittman*, 640 F.3d at 725). As is the case with prosecutorial immunity, a social worker's immunity for legal advocacy applies even to intentional misrepresentations made to the court. *Pittman*, 640 F.3d at 725.

To the extent Tingley's claims are based upon testimony that Defendants Kuchan or Luster gave during the child custody case or any other child welfare proceeding, or Defendant Luster's filing of the child welfare petition (with Defendants Kuzma and Shackleton's approval) in connection with the second investigation, such claims are barred by absolute immunity.

However, immunity does not extend to investigations that do not lead to the filing of a petition. For example, in *Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir. 1989), the court held that a social worker's decision to open a case of suspected child abuse that led to the placement of the

---

professional capacities because those are also considered claims against the state. (ECF No. 53-1, PageID.812 n.5.)

plaintiff's name on the central registry was not shielded by absolute immunity because the action was administrative in nature. *Id.* at 830–31. Thus, Tingley's claims are not barred by absolute immunity to the extent they complain of being placed on the Central Registry.

### 3.    Statute of Limitations

Defendants argue that Tingley's claims against Kuchan, Bolden, and Novosad are time-barred, as their involvement ended on April 22, 2016, when the first investigation was substantiated, and Tingley was placed on the Central Registry. Claims brought in Michigan under 42 U.S.C. § 1983 must be brought within three years of the date of injury. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Tingley filed his complaint in this case on February 3, 2020, so any claims arising prior to February 3, 2017, are barred by the statute of limitations. All of these Defendants' acts that could have injured Tingley occurred no later than April 22, 2016. Although Tingley argues that his claims did not accrue until later because he could not have known of the basis for his claims until Kuchan and the others testified in the child custody proceeding in 2017 (*see, e.g.*, ECF No. 47 at PageID.732), his allegations make clear that he knew or had reason to know of his purported injury no later than when the investigation was substantiated on April 22, 2016, and he was placed on the Central Registry.

Tingley argues that his claims are saved by the continuing violation doctrine. His argument lacks merit. The continuing violation doctrine applies where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, 557

11

F.3d 693, 697 (6th Cir. 2009)). When a continuing violation is identified, the court will "consider all relevant actions allegedly taken pursuant to the [defendant's] discriminatory policy or practice, including those that would otherwise be time barred." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999) (citation omitted). A continuing violation depends on "continual unlawful acts, not continual ill effects from an original violation." *Broom*, 579 F.3d at 555 (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). That is, "[p]assive inaction does not support a continuing violation theory." *Eidson*, 510 F.3d at 635. Although Tingley argues that his "allegations make clear that the violations were continuing" (ECF No. 58 at PageID.902), he fails meaningfully to develop the argument. While new violations may have occurred, Defendants Kuchan, Bolden, and Novosad are not alleged to have had anything to do with them. The amended complaint alleges that Defendants Kuchan, Bolden, and Novosad substantiated their investigation on April 22, 2016, that Defendant Novosad took over supervision from Defendant Bolden, that the case was transferred to Defendant Luster for ongoing services, and Defendant Luster closed the case relating to the substantiation approximately two months later. (ECF No. 47 at PageID.726, 729–30.) They took no further action after that.

In *Printup v. Director, Ohio Department of Job and Family Services*, 654 F. App'x 781 (6th Cir. 2016), the plaintiff alleged that her procedural and substantive due process rights were violated when the defendants designated her a child abuser and placed her on Ohio's central registry, resulting in the loss of her teaching job. The court found that the plaintiff's procedural due process claim accrued when she lost her job as a result of the abuser designation and that her substantive due process claim accrued when she was designated a child abuser. *Id.* at 787–88. The court rejected the plaintiff's reliance on the continuing violation doctrine, noting that her argument

that the hearing officer's subsequent affirmance of the decision constituted "continuing wrongful conduct" was "tenuous at best." *Id.* at 789. The court further found that the plaintiff's "continued appearance on the Central Registry and lack of employment at St. Aloysius were continual ill effects of her initial designation as a child abuser; they were not occasioned by continual unlawful acts." *Id.* at 789–90.

Here, as in *Printup*, Tingley's continued appearance on the Central Registry may have produced continuing ill effects, but it was not caused by continuing unlawful acts. Accordingly, Tingley's claims against Defendants Kuchan, Bolden, and Novosad should be dismissed as time-barred.

### 4.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S.

13

at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that when "pleadings in th[e] case are not ambiguous," and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005).

### a.    Substantive Due Process

Tingley alleges in Count 1 that all Defendants' actions violated his constitutional right to parent, and in Count 2 he alleges that Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson violated his right to substantive due process. Tingley also alleges a substantive due process claim in Count 3 against Defendants Gordon, McCall, and Cheung based on deficiencies in MiSACWIS. Because these claims all invoke the rubric of substantive due process, I will address them together. *See Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) (quoting *Pittman*, 640 F.3d at 728) ("To prove a § 1983 substantive due process claim, the plaintiffs would need to establish either (1) 'deprivations of a particular constitutional guarantee,' or (2) government actions that 'shock the conscience.'").

### Count 1

Tingley's claim in Count 1 asserts that Defendants violated a fundamental right. "[T]he Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006); *see Quilloin*

14

*v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."). "[A] child and his parents share a vital interest in preventing erroneous termination of their natural relationship." *Santosky v. Kramer*, 455 U.S. 745, 760 (1982). Nonetheless, the right to familial integrity and association "is neither absolute nor unqualified." *Kottmyer*, 436 F.3d at 690. In particular, "the government has a compelling interest in protecting minor children from abuse or neglect." *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 821(W.D. Mich. 2004) (citing *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994)); *see Kottmyer*, 436 F.3d at 690 (noting that the right to the maintenance of a parent-child relationship "is limited by an equal[ly] compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents").

Tingley's factual allegations in Count 1 are sparse. He alleges only that "[d]efendants individually and jointly violated [his] Constitutional rights to parent." (ECF No. 47 at PageID.763.) But even considering the remainder of his amended complaint, one is left to guess at how the investigations and placements on the Central Registry impaired his right to parent or affected his relationship with his children. Tingley offers no insight in his response, mentioning only that he "has alleged violations of his constitutional right to parent." (ECF No. 58 at PageID.895.) In light of his failure to develop his argument, it is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (brackets and internal quotation marks omitted)).

The Court might construe Tingley's argument to be that Defendant Luster and her supervisors interfered with his right to parent or caused such interference when they filed the child

welfare petition after the second substantiation, which resulted in Tingley's children being removed from his care. But even if he had made the argument, it would have failed under Sixth Circuit precedent, which holds that, where state law authorizes juvenile courts to make child custody decisions, it is the court alone that deprives the plaintiff of his fundamental right to family integrity. *See Pittman*, 640 F.3d at 729. Although *Pittman* involved Ohio courts, Michigan courts similarly have the ultimate decision-making authority on custody matters. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013) (applying *Pittman* to claims against Michigan social workers based on the appointment of a guardian and custody decision for a developmentally disabled adult).

Thus, I recommend that Count 1 be dismissed as to the State Defendants.[6]

## Count 2

Tingley apparently asserts a substantive due process claim in Count 2 based on governmental actions that "shock the conscience," although he does not specifically allege that theory as the basis for his claim. The substantive component of the Due Process clause protects against "arbitrary and capricious government action that 'shocks the conscience and violates the decencies of civilized conduct.'" *Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Under the substantive due process doctrine, "'governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)

---

[6] Tingley's Amended Complaint also makes allegations regarding interference with his parenting time through the YMCA. Although these allegations might present a closer question as to other defendants (ECF No. 47 at PageID.743-47), he does not argue that these allegations support a cause of action against any of the State Defendants and thus waives any such argument. Indeed, in reviewing the Amended Complaint's allegations, I do not find that they plead sufficient facts to raise a right for relief above the speculative level as to any State Defendant.

(quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). The chief concern of substantive due process is abuse of governmental power or use of such power to oppress. *Guertin*, 912 F.3d at 907 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)); *see also Vinson v. Campbell Cnty. Fiscal Court*, 820 F.2d 194, 198 (6th Cir. 1987) (to analyze the validity of a substantive due process claim the court must "determine whether plaintiff was deprived of a protected liberty interest and whether the deprivation, if any, was the result of egregious abuse of governmental power").

Sixth Circuit law has not been entirely clear on whether a plaintiff must establish the deprivation of an underlying property or liberty interest to establish a claim that government conduct "shocks the conscience." *See Range*, 763 F.3d at 589 ("Our case law on substantive due process is somewhat conflicted as to whether an underlying constitutionally-protected right must be established in order for a government action to violate one's rights by shocking the conscience.") As noted in *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012), ample Sixth Circuit authority supports the conclusion that a plaintiff arguing that governmental action shocks the conscience must demonstrate the deprivation of a liberty or property interest, while other cases suggest that a free-standing cause of action exists for arbitrary government action that shocks the conscience independent of a liberty or property interest. *Id.* at 861–62. Recent cases, however, indicate that a plaintiff must establish the deprivation of a liberty or property interest in order to sustain a substantive due process claim. In *Siefert v. Hamilton County*, 951 F.3d 753 (6th Cir. 2020), the court observed that "when we review a substantive due process claim, we first ask whether the plaintiff has shown 'a deprivation of a constitutionally protected liberty interest' and then ask whether 'the government's discretionary conduct that deprived that interest was constitutionally repugnant.'" *Id.* at 765 (quoting *Guertin*, 912 F.3d at 922). "'Thus, a plaintiff

17

must show as a predicate the deprivation of a liberty or property interest,' as well as 'conscience-shocking conduct.'" *Id.* (quoting *Guertin*, 912 F.3d at 922).

It is not entirely clear whether *Guertin* and *Siefert* disavow the notion that a substantive due process claim can proceed in some contexts without a deprivation of a liberty or property interest solely upon a showing of conscience-shocking or arbitrary government action. *See Lawrence v. Pelton*, No. 1:17-cv-289, 2020 WL 6193886, at *7 (W.D. Mich. Sept. 25, 2020) (acknowledging *Siefert and Guertin* but considering, "[i]n an abundance of caution," whether the defendant's conduct was "so conscience shocking, so arbitrary," that the plaintiff could sustain a viable substantive due process claim even in the absence of a deprivation of a fundamental right or interest). To the extent *Guertin* and *Siefert* require such deprivation, Tingley's substantive due process claim in Count II fails because, as explained above, he has not established the deprivation of a liberty interest (the right to parent).

So, assuming that a plaintiff may raise a substantive due process claim solely based on conduct that shocks the conscience, the question becomes whether Tingley has sufficiently alleged such conduct. Part of the problem in analyzing the claim is that Tingley alleges a laundry list of acts committed by "[t]hese Defendants," although it is clear from the amended complaint that only some of the identified Defendants engaged in the alleged conduct. For example, some of the conduct relates to parenting time following the second substantiation and the filing of the child welfare petition, but only Defendant Luster is alleged with any particularity to have been involved in this conduct. Similarly, Tingley complains about the investigations and substantiations which led to his placement on the Central Registry, but Tingley alleges no fact indicating that Defendants Orr, Fountain, or Selden-Johnson were involved in any way in those investigations.

18

In any event, Tingley still fails to state a substantive due process claim. "[T]he 'shocks the conscience' standard sets a high bar." *Range*, 763 F.3d at 589. "Such conduct includes actions 'so "brutal" and "offensive" that [they do] not comport with traditional ideas of fair play and decency.'" *Id.* at 589–90 (quoting *Lewis*, 523 U.S. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957))). The Sixth Circuit has held that in the context of a government investigation of child abuse allegations, "evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience'" is necessary to establish a substantive due process violation. *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013) (quoting *Teets v. Cuyahoga Cnty.*, 460 F. App'x 498, 502 (6th Cir. 2012)).

While Tingley's allegations are serious and disturbing, they do not meet this demanding standard as it has been interpreted in this Circuit as to the State Defendants. Regarding the investigations, he does not allege, for example, that any State Defendant fabricated evidence to support the investigation or acted with a malicious intent to harm him by substantiating the allegations of abuse or endangerment and placing him on the Central Registry. In each instance (the second and third investigations), Defendants initiated the investigation following a report of abuse, albeit from the mother, as they were legally required to do. Although Tingley complains that Defendants conducted shoddy investigations by ignoring certain evidence and mischaracterizing other evidence, he does not allege conduct "so 'egregious that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *Lewis*, 523 U.S. at 846).

For example, in *Blythe v. Schlievert*, 245 F. Supp. 3d 952 (N.D. Ohio 2017), the plaintiff sued a doctor based on his determination that the plaintiff's child suffered from shaken baby syndrome. The plaintiff alleged that the doctor had ignored information that contradicted his

findings and that head trauma experts had authored reports finding that the doctor's report "was false, contrary to evidence-based medicine, and failed to consider all possible explanations regarding KB's clinical presentation." *Id.* at 955. The court concluded that the plaintiff failed to state a substantive due process claim because the defendant's "allegedly false and reckless medical determinations regarding KB's medical presentation, his disregard of evidence showing the absence of abuse, and the various representations to [children's services] do not constitute conscience-shocking conduct." *Id.* at 957. In particular, the court observed that there were "no underlying facts to show Dr. Schlievert fabricated or included fictitious evidence to support his conclusion that KB was an abused child." *Id.* at 958. Tingley's allegations here are similar, and likewise fail to allege facts demonstrating "conscience-shocking conduct."

The same conclusion adheres to Tingley's allegation that Defendants treated the mother more favorably than Tingley, even considering Defendant Shackleton's alleged statement to Tingley that "this never would have happened to you if you were a mom." (ECF No. 47 at PageID.751.) As Defendants note, each investigation occurred in the midst of a heated custody dispute and salvos of abuse allegations by both parents. In such a scenario, it is unsurprising that one or both parents would perceive discrimination. However, as the court observed in *Fox v. County of Tulare*, No. 1:11-cv-0520, 2014 WL 3687735 (E.D. Cal. July 24, 2014)—a case involving similar back and forth allegations of abuse between mother and father in the midst of a custody dispute, but with the claims of disparate treatment being brought by the mother—disparate treatment is bound to occur in such situations but is not necessarily unlawful: "Given the nature of child custody disputes involving, as they most commonly do, one party of one gender opposing the other party of the other gender; the refusal of district courts to recognize gender as the basis

for membership in a protected class for equal protection purposes seems logical."[7] *Id.* at *13. In any event, even this allegation of bias does not bring the alleged conduct of any State Defendant into the ambit of what has been held to shock the conscience.

### Count 3

In Count 3, Tingley alleges that Defendants Gordon, McCall, and Cheung violated his right to substantive due process when they failed to remedy deficiencies or defects in MiSACWIS and ignored excessive risk MiSACWIS caused. This claim fails for several reasons, including that Tingley fails to allege that defects in MiSACWIS deprived him of a liberty or property interest. Moreover, Tingley's sparse allegations against these Defendants does not show conduct "so 'egregious that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski*, 287 F.3d at 510 (quoting Lewis, 523 U.S. at 846). Nothing in his amended complaint shows that Defendants Gordon, McCall, and Cheung knew of facts from which they could infer a "substantial risk of serious harm" to Tingley, that they did infer it, and that they acted with indifference toward Tingley's rights. *Range*, 763 F.3d at 591 (quoting *Ewolski*, 287 F.3d at 513). Therefore, this substantive due process claim should be dismissed.

---

[7] Apart from failing to state a due process claim, several cases indicate that Defendants are entitled to qualified immunity based on the investigations and Tingley's placement on the Central Registry. In *Achterhof v. Selvaggio*, 757 F. Supp. 837 (W.D. Mich. 1991), on remand after the Sixth Circuit had found an erroneous application of absolute immunity, *see Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir. 1989), Judge Hillman granted the defendants' motion to dismiss because their investigation and placement of the plaintiff on the Central Registry did not violate the plaintiff's clearly established federal rights. 757 F. Supp. at 839–40. In the years since Judge Hillman's decision in *Achterhof*, other Michigan district courts have likewise found that qualified immunity barred claims based on placement on the Central Registry. *See Ballard v. Johnson*, No. 15-11039, 2017 WL 1151166, at *7–8 (E.D. Mich. Mar. 28, 2017); *Vermeesch v. Hall*, No. 98-74093, 2000 WL 654953, at *7 (E.D. Mich. Apr. 24, 2000).

### b.      Procedural Due Process

Tingley also alleges procedural due process claims in Counts 2 and 3. Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Pittman*, 640 F.3d at 729 ("To establish a violation of his procedural due process rights, Pittman must show (1) that [he] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." (internal quotation marks omitted)). Tingley does not allege in either Count 2 or 3 the deprivation of a liberty or property interest. In his response, he asserts that he was deprived of due process during the substantiation phase of each investigation, but he fails to point to the specific source creating a right protected by the Due Process Clause. Regardless, Tingley has no liberty or property interest in connection with the investigation because the manner in which CPS investigators perform their investigations is discretionary, and no particular outcome is mandated. *Langdon v. Skelding*, 524 F. App'x 172, 177–78 (6th Cir. 2013).

Regarding Count 3, Tingley argues that the State of Michigan created procedural due process rights when it established the MiSACWIS. He fails to explain how or why this is so. Although Tingley references his allegation that Defendant Orr generated a "help ticket" to correct the substantiation reversals in MiSACWIS (ECF No. 58 at PageID.895–96), he provides no reasoned argument to explain how this conduct created either a property or liberty interest.

Accordingly, Tingley's procedural due process claims fail.

### c.      First Amendment Retaliation

Tingley alleges in Count 5 that Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson retaliated against him in

violation of his First Amendment rights. In order to establish a prima facie case of retaliation, a plaintiff must show that: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)). Defendants argue that the claim is subject to dismissal on several grounds. First, they argue that Tingley fails to allege that they took any adverse actions against him or that they took any actions causally connected to his purported speech. Second, they note that Tingley did not allege that Defendants Orr, Fountain, or Selden-Johnson took any actions against him. Finally, they argue that, as to Defendants Kuchan, Williams, Bolden, Kuzma, Desmarais, and Novosad, the allegations are mere conclusions without supporting facts.

As is the case with his right-to-parent claim, Tingley's response to Defendants' argument is anemic, asserting only that he has alleged a violation of his first amendment rights. (ECF No. 58 at PageID.895.) Because his response is, in effect, no response at all, it is waived. In any event, the claim is subject to dismissal because its allegations are conclusory and, under *Twombly/Iqbal*, fails to allege sufficient factual matter to establish a prima facie case of retaliation.

### d.   Conspiracy under Sections 1983 and 1985

Tingley alleges a conspiracy claim under 42 U.S.C. § 1983 in Count 6 against Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson and a conspiracy claim under 42 U.S.C. § 1985 in Count 7 against the same Defendants. The full extent of Tingley's Section 1983 conspiracy allegations in Count 6 is:

590.    Given these Defendants' broad-ranging accusations and failures against Plaintiff it is not possible to justify these Defendants' actions as simply mistaken interpretations of law or as individual acts.

591.    Instead, these Defendants repeatedly did whatever it took to create a case against Plaintiff, in the absence of rational belief or probable cause.

592.    Such efforts constitute a conspiracy under 42 U.S.C. § 1983.

(ECF No. 47 at PageID.767.)

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The Sixth Circuit has held that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983." *Becker v. Clinton*, No. 99-3811, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Here, Tingley's conspiracy claim consists of nothing more than conclusory allegations without supporting facts. His complaint concerns three separate investigations spanning more than three years, each involving different investigators and supervisors. There are no facts supplying the conspiratorial glue to show a single plan among all of the alleged conspirators to deprive Tingley of a federal right. Thus, Count 6 should be dismissed.

Tingley's allegations concerning his Section 1985 conspiracy claim are as follows:[8]

594.    Defendants Kuchan, Luster, Williams, Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, [and] Selden-Johnson . . . entered the

---

[8]  Tingley does not identify the specific subsection of 42 U.S.C. § 1985 he relies on. It appears that Section 1985(3) is the only appropriate provision.

conspiracy for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws.

595.    Each of these Defendants shared a common discriminatory objective.

596.    Defendant Shackleton stated that conduct against Plaintiff occurred because he was the father and not the mother.

(ECF No. 47 at PageID.768.)

To maintain a cause of action for conspiracy under Section 1985(3), a plaintiff must establish the following elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (*citing Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). In addition, the plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Johnson*, 40 F.3d at 839. Tingley's Section 1985(3) conspiracy claim fails for the same reason as his Section 1983 conspiracy claim; he provides no factual basis to support his conspiracy allegation. *See O'Hara v. Mattix*, 255 F. Supp. 540, 542 (W.D. Mich. 1966) ("The courts will not accept mere allegations of conspiracy; there must be some showing of facts to support the conspiracy."). Tingley's citation to Defendant Shackleton's alleged statement does not fulfill this requirement. Moreover, apart from the complete lack of a factual basis, Tingley's Section 1985(3) claim fails because courts have declined to recognize gender as a protected class in Section 1985(3) claims based on child custody proceedings. *See Darian v. Cashe*, No. 17-52-JJB-EWD, 2017 WL 3326976, at *7 (M.D. La. July 17, 2017) (collecting cases and noting that "Darian has not shown that as a father in child custody proceeding pending at the 21st JDC, he is a member of a protected class for equal protection purposes").

### e.  Failure to Supervise

Tingley asserts a failure-to-supervise claim against Defendants Bolden, Shackleton, Kuzma, Desmarais, Novosad, Orr, Fountain, and Selden-Johnson in Count 11. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough; nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Supervisory liability attaches only if the plaintiff shows that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [defendant]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Tingley fails to allege a basis for supervisory liability against these Defendants. First, as Defendants note, the amended complaint contains no factual basis tying Defendants Fountain and Selden-Johnson to the investigations in any manner. More importantly, however, Defendant Shackleton's single statement is insufficient to show that the supervisory Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Peatross*, 818 F.3d at 242. Finally, because Tingley fails to demonstrate a constitutional violation, the supervisory liability claim must fail. *See Connolly v. Martin*, No. 99-2317, 2000 WL 1478039, at *2 (6th Cir. Sept. 26, 2000) ("Without an underlying violation, there can be no supervisory liability.").

26

### f.       Unpled Equal Protection Claim

Tingley "is the master of his complaint" and "decides what claims to bring." *Wells v. Bottling Grp., LLC*, No. 10-99-ART, 2010 WL 4822740, at *1 (E.D. Ky. Nov. 22, 2010). Although Tingley hints at an equal protection claim in his amended complaint, for whatever reason, he elected not to assert that claim. In his response, however, he discusses an equal protection claim. (ECF No. 58 at PageID.893–94.) Because the claim is not before the Court, it need not be addressed. Moreover, "it is axiomatic that a plaintiff may not amend his complaint through allegations made in a response to a motion to dismiss." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *8 (E.D. Mich. Oct. 29, 2014) (citing *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003)).

### B.       State-Law Claims

If the Court adopts this Report and Recommendation, it must decide whether to exercise supplemental jurisdiction over Tingley's state-law claims. I recommend the Court decline to exercise supplemental jurisdiction and dismiss his state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Applying these considerations, it is especially appropriate here to dismiss the state-law claims as the case is at its early stages, and no discovery has occurred.

## C.      Defaulted Defendants

Dismissal of the claims as set forth above will leave outstanding the defaults against Defendants Luster and Shackleton. Pursuant to Federal Rule of Civil Procedure 55, a party must follow a two-step process to obtain a default judgment. First, pursuant to Rule 55(a), the party seeking a default judgment must obtain entry of a default by the clerk of the court. Second, pursuant to Rule 55(b), the moving party may seek entry of a judgment on the default under either subdivision (b)(1) or (b)(2). Because Tingley's claim is not for a "sum certain," he would be required to "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Even when a default has been entered, a plaintiff has no absolute right to a default judgment. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013). This is because "the decision to grant a default judgment is within the Court's discretion." *Id.* (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))*; see also Lee v. Foxpointe Condominium Ass'n*, No. 14-11216, 2016 WL 424941, at *1 (E.D. Mich. Feb. 4, 2016) ("[T]he Court has broad discretion in determining the circumstances under which a default judgment should enter." (citing *In re The Home Rests., Inc.*, 285 F.3d 111, 114–15 (1st Cir. 2002))). In exercising its discretion, a court may consider, among other factors, whether the plaintiff's allegations state a claim. *Sinclair v. United States*, No. 5:06-CV-179, 2007 WL 9777950, at *1 (W.D. Mich. Mar. 2, 2007); *see also Carl's Jr. Rests. LLC v. Margaret Karcher LeVecke Enters., LLC*, No. 3:18-cv-1357, 2020 WL 836549, at *2 (M.D. Tenn. Feb. 20, 2020) (although the defaulting party is deemed to have admitted all of the complaint's well-pleaded factual allegations concerning liability, "the court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability" (citing *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016))).

Defendants Luster and Shackleton are included in Counts 1, 2, 5–7, and 11, which I have recommended for dismissal for failure to state a claim. In addition, Defendant Luster is included in Tingley's First Amendment retaliation claim set forth in Count 4, which I conclude fails to state a claim for the same reasons that Count 5 fails to state a claim. However, the analysis may be different as to Defendants Luster and Shackleton as to some or all of the claims, and Plaintiff was not called upon to address the sufficiency of his claims as against those defendants in his response to the State Defendants' motion to dismiss. Accordingly, I recommend that the Court order Plaintiff Tingley to show cause why the Court should not decline to enter default judgments against Defendants Luster and Shackleton because Tingley fails to state a claim against these defendants.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court grant the State Defendants' motion to dismiss (ECF No. 53) and dismiss the federal claims with prejudice. I further recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims. Finally, I recommend that the Court order Plaintiff Tingley to show cause why it should not decline to enter default judgments against Defendants Luster and Shackleton and dismiss the claims against them with prejudice.

Dated: April 20, 2021                                    /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).